[Civ. No. 6766.   Second Appellate District, Division One.—September 1, 1931.]

MAX BRANDES, Respondent, v. ERNEST L. FREITAS, Appellant.

Clay & Handy and W. U. Handy for Appellant.

George C. Mansfield and Martin Forrest for Respondent.

HOUSER, J.—Defendant appeals from a judgment rendered against him in an action for damages for personal injuries.

The injuries sustained by plaintiff were the result of a collision between him personally and an automobile owned and operated by defendant at a time when defendant was backing his automobile a distance of twenty-six feet out of his private driveway across a public sidewalk on which plaintiff was a pedestrian.

The first question presented to this court for its determination is whether the trial court was justified in its conclusion that the acts of defendant in the premises were negligent. Among other facts adduced on the trial of the action appeared the following: Besides defendant, the automobile with which plaintiff collided contained four passengers, three of whom · occupied the back seat. Although immediately prior to the time when such persons became occupants of the automobile, as well as at some time very shortly after they entered the automobile and preceding the time when the accident occurred, each of them gave some attention to ascertain the fact whether any person was on the sidewalk in the vicinity of its intersection with the private driveway of defendant, none of them saw plaintiff, who was in plain and unobstructed view, in broad daylight, and approaching such intersection. The automobile "was going about as slow as a car could go; . . . just moving and that is about all; . . . couldn't possibly have been more than a mile or a mile and a half an hour, . . . "

The specific "care" taken by defendant to see that the automobile operated by him during its course of twenty-six feet should collide with no pedestrian who was using the sidewalk consisted of the fact (as testified by defendant) that his "head was out of the window, backing out; . . . not with the intention of looking up and down the street to see if anybody was there; . . . didn't particularly look for that purpose". No information was given to defendant by either of his passengers relative to the situation of plaintiff, nor did defendant request either of them "to see if the way was clear". As far as defendant could remember, no "warning" was given by him of the approach of his automobile to the intersection of the private driveway with the sidewalk.

It is well-settled law that in the use of a public sidewalk a pedestrian thereon has a superior right of way over an automobile attempting to cross the sidewalk, and that in crossing such sidewalk the driver of an automobile is obligated to use reasonable care to avoid injury to any pedestrian who then may be in the exercise of his preferential right to the use of such sidewalk.

Considering the facts herein relative to the conduct of defendant immediately preceding the happening of the accident, it is apparent that he used no care as far as the particular safety of plaintiff was concerned. He neither saw plaintiff nor knew of his presence in the vicinity where the accident occurred. With reference to the manner in which the automobile of defendant was operated by him, as far as it had any relation to the prevention of injury to plaintiff, defendant might as well have closed his eyes during the time that he was backing his automobile out of his driveway. It was the legal duty of defendant to observe plaintiff's use of the sidewalk and, even to the point of entirely stopping the progress of the automobile, yield to plaintiff his superior right of way at such intersection. The evidence is conclusive not only that defendant did not see plaintiff at all, but that defendant took no care to avoid injuring plaintiff. It is apparent that the failure of defendant to see plaintiff and thereupon to so operate the automobile as to avoid injury to him, clearly establishes defendant's negligence in the premises.

The second point urged by appellant as a sufficient reason for reversal of the judgment is that plaintiff was guilty of contributory negligence, and hence was precluded from a recovery of damages.

Relating to the conduct of plaintiff on the occasion in question, from testimony given by a witness on the trial of the action it appears that immediately prior to the happening of the accident plaintiff was on the sidewalk "walking with his head down—seemed to be looking at his feet". When the witness first observed the automobile plaintiff was "about the middle of the driveway; . . . he was nervous and he didn't know just what to do; . . . he went forward just a little and then he went backward, . . . hesitating to decide just what to do; . . . his right shoulder was towards the car to a certain extent and he wasn't directly facing onto the car; he was kind of sideways; . . . " Plaintiff testified that he was going home from his work and was walking on the sidewalk on the opposite side of the street from that on which his home was located, and that "I was walking on the sidewalk and when I got nearer to my home I looked on the other side, I thought probably some of my family would meet me, which they generally do, and at that time I was hit there. That is all I know."

Combining the salient features of the evidence relating to the asserted negligence of plaintiff, the problem presented to this court is whether, without being considered legally guilty of negligence contributing proximately to a collision between him and an automobile crossing a public sidewalk, a pedestrian thereon may, in broad daylight, and having a clear and unobstructed view, walk "with his head down—looking at his feet", and immediately preceding the accident, caused by curiosity on his part, or otherwise, look "on the other side" of the street.

The law appears to be well established that when using a sidewalk in a residential district a pedestrian has a right to assume that at least no one not possessing an equal right to its use will do so without using due care to protect such pedestrian from injury. The sidewalk is a part of the street set apart for the use of pedestrians, and no other traveler or user of the public street is privileged to use the sidewalk adjacent thereto either to the exclusion of a pedestrian desiring to use the same, or in such manner

as will render the sidewalk unsafe for the use of the pedestrian; in other words, although not entitled to an exclusive use of the sidewalk, the pedestrian is granted a preferential right to the use thereof to the extent that any other person who may use the same for a different purpose must do so subject to the superior right therein of the pedestrian by at least giving timely and appropriate notice or warning of his intention so to do, and then only with such safeguards to the pedestrian as will adequately and reasonably protect him from injury. On the other hand, although the pedestrian is possessed of a preferential right in the use of the sidewalk, he may not exercise such right in an arbitrary or unreasonable manner, or without regard to the lesser right of other possible users of the sidewalk. The superior right of the pedestrian to the use of the sidewalk for the purpose of traveling thereon does not go to the extent of legally entitling him to ignore the inferior right of others to put the sidewalk or a portion thereof, to a different use. The pedestrian is obliged to recognize and to permit the use of the sidewalk by others, not only fellow-pedestrians, but also by those who may desire to and do use the sidewalk for other legitimate purposes, among which is the crossing thereof by automobiles. And so it comes about that in the use of a sidewalk even by persons whose respective rights to such use are unequal one with the other, each of such persons is bound to take not only reasonable precautions to protect himself from injury, but as well to prevent injury to the other. Manifestly, in a thickly populated residential district in which at least by the owners of a majority of the homes an automobile is owned and operated, ordinarily necessitating the maintenance of a private driveway connecting the garage with the street on which the property of the owner thereof faces or fronts, ordinary care on the part of a pedestrian on a sidewalk to prevent his being injured by an automobile being backed out of such driveway would not be obvious where it appeared that the pedestrian was walking backward on the sidewalk, with his eyes blindfolded. On the other hand, even when about to cross a busy business thoroughfare, no positive duty rests upon a pedestrian to "stop, look and listen". (*Mann* v. *Scott*, 180 Cal. 550, 554 [182 Pac. 281]; *Reaugh* v. *Cudahy Packing Co.*, 189 Cal. 335, 342 [208 Pac.

125], and authorities there respectively cited.) Applicable to circumstances falling between such extremes of conduct may be found the elastic rule that the conduct of the average prudent person in similar circumstances is the guide for a determination of whether the pedestrian has been guilty of negligence which contributed proximately to the happening of the accident; and that the duty of determining whether the pedestrian has followed such a course conclusively rests with the jury; or, in its absence, with the trial judge. In the instant matter, with reference to the care exercised by plaintiff at the time in question and the legal consequences thereof, in part the trial judge expressed his views thereon in the following apt, if not legally correct, language:

"A pedestrian using the sidewalk in his home neighborhood has a right of way over one who drives a vehicle across the same, and such pedestrian has the perfect right to assume that the sidewalk is safe for him to walk upon. (*Crawley* v. *Jermain,* 218 Ill. App. 51.) It cannot be claimed that it is want of ordinary care for a pedestrian, homeward bound at the end of a day's labors, traveling upon a familiar sidewalk, to fail to observe the comparatively silent moving of an automobile on a private driveway. He has the right to assume that that place of passage reserved for him as a pedestrian is safe, and that no one will back an automobile across it while he is on its course, without warning sufficient to attract his attention. It follows that even though such pedestrian be daydreaming, while traveling the sidewalk under such circumstances, and unconscious of all about him, excepting only those things which present an obstacle to his forward movement, or suddenly beat in upon his consciousness by reason of unusualness, he is not doing anything unusual, nor anything different from what countless others are doing under similar circumstances. It is the common experience of tired humanity when going home after a day's work to become immersed in thought and oblivious to one's surroundings, when traveling in a place of recognized and known safety, and to so travel long distances, without conscious knowledge of one's immediate surroundings, guided safely and correctly by the subconscious mind. *And therein lies no want of ordinary care, as it*

*represents the ordinary conduct of humanity under similar circumstances.''*

It follows that on competent and material evidence, the trial court having reached the conclusion that considering the law and the facts applicable to the instant case plaintiff was not guilty of negligence which proximately contributed to the accident in question—this court is bound thereby.

Appellant raises the further objection to the judgment that it was excessive in amount; but since on an examination of the record herein, and particularly that portion thereof which relates to the injury sustained by plaintiff, it appears that the judgment was not so large as to indicate that it resulted from passion or prejudice on the part of the trial judge, the judgment cannot be disturbed by this tribunal on account of the amount of damages which was awarded to plaintiff.

The judgment is affirmed.

Conrey, P. J., and York, J., concurred.