## CAR & GENERAL INS. CORPORATION v. KEAL DRIVEWAY CO. et al.

### No. 10420.

Circuit Court of Appeals, Fifth Circuit.

Jan. 20, 1943.

Rehearing Denied Feb. 12, 1943.

Wm. H. Jackson, of Tampa, Fla., for appellant.

R. W. Shackleford, of Tampa, Fla., for appellees.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

Ralph Campbell was injured when his automobile collided with another automobile owned by Keal Driveway Company, and which was being operated at the time by its employee, R. S. Bunnell. Campbell, who was working in the course of his employment with Franklin Products Corporation, elected to accept compensation benefits under the provisions of the Florida Workmen's Compensation Act. As subrogee, Car & General Insurance Corporation, the employer's insurance carrier, brought this action on behalf of itself and Campbell, to recover damages against Keal Driveway Company and R. S. Bunnell for the injuries sustained by Campbell. Sec. 39, Florida Workmen's Compensation Act, Acts 1935, c. 17481. The plaintiff alleged that the accident was the result of Bunnell's negligence; and the defendants answered denying that they were guilty of negligence, and alleging that in any event

Campbell was guilty of contributory negligence which barred recovery. The case was tried to a jury which found the defendants guilty of negligence, and Campbell guilty of contributory negligence. Judgment was thereupon entered for the defendants and the plaintiff appealed.

The appellant contends that the trial court erred (1) in submitting the question of contributory negligence to the jury, and (2) in failing, after being requested to do so, to charge the jury on the law of sudden emergency.

About ten o'clock in the morning on May 14, 1941, Campbell was driving his Ford automobile in a northerly direction along a paved highway in Hillsborough County, Florida. At that time and place Bunnell, in the course of his employment with Keal Driveway Company, was operating a Nash automobile and by tandem arrangement was towing another Nash automobile along the highway in a southerly direction. The road was straight and twenty feet wide. The day was clear. Campbell and Bunnell were driving their cars at speeds from forty-five to fifty miles per hour, and they approached and collided head-on, and both drivers were rendered unconscious by the impact. Campbell was seriously injured.

The drivers were the only eye-witnesses to the accident, and both testified that the collision was head-on, and the photographic evidence is to the same effect. Shortly after the accident Bunnell signed a statement to the effect that the Nash automobile was sideswiped, but his evidence on the trial was that the accident was a head-on collision, and that it was caused by Campbell driving the Ford automobile from its right-hand lane and across the road and into the path of the oncoming Nash automobiles. Campbell's version of the accident is materially different from that given by Bunnell. He testified that as he moved along the highway he saw the Nash automobile coming toward him about one-quarter of a mile away; that it was on its left side of the road, and on his side; that for a short distance its wheels would run off the pavement and onto the shoulder of the road; that as it came nearer it gradually moved over to its proper side of the road, and he then noticed it was towing another automobile; that when the cars came within about 200 or 250 feet of his car they were on their proper side of the road; that as they came nearer and about 200 feet from him he could not see a driver at the wheel of the first car; that when the first car came within a few feet of him, between ten and twenty feet, it suddenly swerved across the center line and into the path of his automobile; and that the cars met head-on and he was rendered unconscious.

The testimony was in sharp conflict, and it was for the jury to weigh the evidence and determine whether the plaintiff had established by a preponderance of the evidence that Bunnell was guilty of negligence which caused the accident, and, if so, whether the defendant had carried its burden of establishing by a preponderance of the evidence that Campbell had been guilty of contributory negligence.

The issue of contributory negligence was for the jury, but we think that on the facts of this case it was prejudicial error to submit the issue without charging the jury on the rule of sudden emergency, proper request for such charge having been made, and its refusal objected to. Moreover, after the jury had retired to consider its verdict, it re-entered the court room and request was made by a juror for further instructions as to the duty of Campbell if "he was frightened by the oncoming danger and he tried to swing to the left to get out of the path of trouble." Counsel for the plaintiff again requested the court to charge as to one's duty when confronted by a sudden emergency, but the court refused to give such charge.

When Campbell first saw the Keal cars, they were on the wrong side of the road and one-quarter of a mile away. They then moved gradually to their right side of the road and continued to approach. Campbell had the right to assume that they would, in obedience to the rules of the road, stay on that side. Until something occurred to make him think otherwise, he had every right to assume that Bunnell would move his vehicles along their proper side of the road in a careful and prudent manner.

The law takes into account situations as they exist at the time of and shortly before the happening of an accident. According to Campbell's testimony, the automobiles were about 200 feet apart when he first noticed that they appeared to be operating without a driver. This was his first notice that their driver was missing, asleep, or otherwise incapacitated. The cars were then moving at combined speeds of from ninety to one hundred miles per

hour—from 132 to 146 feet per second. There was then, at most, little more than one second in which Campbell could act to avoid danger.

In such cases as this, it is the law that one placed in a position of sudden emergency or peril by the negligence of another, and not by his own negligence, is not held to the same degree of care and prudence as one who has time for thought and reflection. Thus, if one finds himself in a position of sudden peril and acts as a person of ordinary prudence would act under such circumstances, the jury may find him free from negligence or contributory negligence, although he might have been able to avoid the accident under less pressing circumstances. 38 Am.Jur., Negligence, § 41; 5 Am.Jur., Automobiles, § 171; White v. Hughes, 139 Fla. 54, 190 So. 446, 452; Hainlin v. Budge, 56 Fla. 342, 47 So. 825, 830; Lehigh Valley R. Co. v. Kilmer, 2 Cir., 231 F. 628, 632; Payne v. Shotwell, 3 Cir., 273 F. 806, 811. Cf. Feck's Adm'r v. Bell Line, 284 Ky. 288, 144 S. W.2d 483; Bloxom v. McCoy, 178 Va. 343, 17 S.E.2d 401.

If the jury believed that Bunnell was not at the wheel and that the Keal cars suddenly swerved into the path of Campbell's automobile, it could have found that a real emergency existed. If the jury found that under such circumstances of sudden peril Campbell did turn left, or did nothing but keep to his proper side of the road, it might have, under proper instructions, excused him for not thinking and acting otherwise in the second or fraction of a second intervening.

Failure to charge the jury as to the law of sudden emergency was error. The judgment is reversed and cause is remanded for a new trial.

Reversed and remanded.

HUTCHESON, Circuit Judge (dissenting).

I cannot agree with the conclusion of the majority that on the facts of this case "It was prejudicial error to submit the issue [of contributory negligence] without charging the jury on the rule of sudden emergency". In the first place, I think the evidence, as a matter of law, established that Campbell was contributorily negligent and a verdict should have been instructed on that point. City of Tallahassee v. Fortune, 3 Fla. 19, 52 Am.Dec. 358; Lindsay v.

Thomas, 128 Fla. 293, 174 So. 418; Stanford v. Atlantic Life Ins. Co., 5 Cir., 109 F.2d 428.

Campbell's testimony was to the effect that when yet a quarter of a mile away from the oncoming automobile, he saw defendants' car directly in his pathway and "occasionally the wheels would go off of the pavement and onto the shoulder then the car would right itself and come on." "When it was some 250 or 300 feet from my car it bore to the proper—its proper side of the road." At that time, "I noticed no one was at the wheel".

"Q. Did you, sir, at any time give a signal? A. No, sir.

"Q. Did you at any time swing your car to the right on the shoulder? A. No, sir, definitely not.

"Q. You continued forward in the pathway in which you were traveling. A. Yes.

"Q. Up till the time of the impact? A. Yes, sir.

"Q. Did you swerve it in any way? A. You mean before the impact?

"Q. Yes, sir. A. No, sir."

At that time Campbell was driving at from 45 to 50 miles per hour, and he testified:

"I did not see anyone at the steering wheel; so as the car drew near I was directing my attention to see how the car was being guided or steered." "I was driving on my side and watching that car to see how it was being steered."

"Out of curiosity I wondered how the car was being steered."

"Q. How it was automatically running, so to speak? A. Yes."

Cf. Iverson v. Knorr, S.D., 298 N.W. 28.

Nothing in Campbell's testimony presented the issue of sudden fright, of action in extremis. The doctrine Campbell invokes and the appellate court applies is not a doctrine excusing from his negligence one contributorily negligent. It is a doctrine teaching that where one by his negligence has put another into a position of sudden peril so that that other has to act with suddenness, those conditions can be taken into account by the trier in determining whether, though the one put in peril did not act prudently, the reason he did not do so was attributed to the fault of the negligent one in creating conditions of such suddenness that prudent and careful action could not

be taken. The doctrine has never been applied except in cases of really sudden peril. Particularly has it never been applied as here to excuse the contributory negligence of one, who, failing to use the caution which was available to him before the moment of impact, finds himself unable to use it then. Feck's Adm'r v. Bell Line, Inc., 284 Ky. 288, 144 S.W.2d 483, 485, is a case in point, and interestingly discusses the question posed here. In that case, rejecting the claim made here that the issue of sudden peril should be charged, the court said:

"As a matter of fact it might be said that most persons injured in accidents are confronted with a sudden peril, otherwise, as a rule, there would be no injury since, if the peril were not sudden, the injured party would ordinarily have time to avoid it. It appears to us that a qualifying instruction of the character contended for is necessary, and that the sudden emergency rule applies, *only where the evidence discloses that one became aware of an emergency and was put to a rapid choice of alternative courses of action in order to* avoid the accident and the jury, in the state of the evidence, and in the light of subsequent events, might reach the conclusion that the course of action adopted was an unwise one. In such circumstances it sometimes becomes necessary to qualify the usual instructions by an instruction defining the right of one confronted by such an emergency. * * *

"*In the instant case there is nothing in the evidence to indicate that the deceased, Feck, ever realized that he was confronted with a sudden peril or emergency.* As far as the evidence goes he may not have seen the truck with which he collided. *The evidence wholly fails to show that he became aware of an emergency* such as to put him to a rapid choice between two or more courses of action in order to avoid the collision, and this being true it appears to us that there was no probability of the jury believing that he pursued an unwise or negligent course in attempting to avoid injury. We reach the conclusion that in the circumstances disclosed by the evidence the ordinary contributory negligence instruction, when considered in connection with the ordinary care instruction, was sufficient and that the trial court committed no error in refusing to modify it as requested by the appellant." (Emphasis ours.)

Cf. Kiddle v. Schnitzer, 167 Or. 316, 114 P.2d 109, 117 P.2d 983.

But if such a charge should have been given, the charge requested was not qualified as it should have been by requiring that the emergency had arisen without prior negligence on the part of Campbell, Carpenter v. Campbell Automobile Co., 159 Iowa 52, 140 N.W. 225; Bolton v. Wells, 58 N.D. 286, 225 N.W. 791; Dodds v. Gifford, 127 Cal. App. 629, 16 P.2d 279; Alaga Coach Line, Inc., v. Foy, 227 Ala. 506, 150 So. 493; Prevost v. Smith, La.App., 197 So. 905; Gajewski v. Lightner, 341 Pa. 514, 19 A.2d 355. I respectfully dissent.