**Paul E. HASSELBRINK and Eva G. Hasselbrink, Appellants,**

v.

**George SPEELMAN, Appellee.**

**No. 12916.**

United States Court of Appeals Sixth Circuit.

June 25, 1957.

Richard W. Todd, Cincinnati, Ohio (Clifford R. Curtner, Curtner, Brenton & O'Hara, Dayton, Ohio, Dinsmore, Shohl, Sawyer & Dinsmore, Cincinnati, Ohio, on the brief), for appellants.

Hugh H. Altick, Dayton, Ohio (Altick & McDaniel, Dayton, Ohio, on the brief), for appellee.

Before ALLEN, McALLISTER and MILLER, Circuit Judges.

McALLISTER, Circuit Judge.

The sole issue in this personal injury case is whether the trial court was in error in refusing to charge the jury on the degree of care required of a motorist confronted by a sudden emergency.

Paul E. Hasselbrink and Eva G. Hasselbrink, appellants, on July 28, 1952, were returning, in their automobile, from a vacation spent in Michigan, and were proceeding to their home in Ft. Thomas, Kentucky. At Celina, Ohio, Mr. Hasselbrink, who had been driving, stopped for a soft drink, after which, Mrs. Hasselbrink drove the car, continuing in a southerly direction at a rate of between 30 and 35 miles per hour, on the westerly half, or her side, of the highway designated as Route 127.

Appellee Speelman was driving his automobile at the same time in a northerly direction approaching appellants. Mrs. Hasselbrink first observed Mr. Speelman approaching at a rate of speed of between 30 and 35 miles per hour on the easterly half, or his side, of the highway. It was about 4:30 in the afternoon of a very hot, humid day. It was getting dark, and looked as though it would storm any minute.

Mr. Speelman, the appellee, says that as he was going north, it was windy, and "a gust of wind took my car." Before he had seen the Hasselbrinks, he had felt the wind hit his automobile. As he came up to the point of the accident, he says that he could feel the wind blowing against his car, in the impending storm. At that time the Hasselbrinks were on their side of the highway and Mr. Speelman was on his side. He says that when he was 200 feet away from the other car, the rear end of his car blew over a little; that he was blown to the left, but that he turned his car back; and that at that instant Mrs. Hasselbrink turned over toward him. He testified that a gust of wind made his car go "a little bit over;" that when his car moved to the left, he was not over the center line, and that the next thing he knew, she curved in front of him and he turned to his right. As he came north, he testified, he had difficulty with his car's weaving "a little bit" on one occasion. He stated that he had maintained a steady speed, until his car made that sudden move to the left, and then he cut back to the right side of the road, and put on his brake a little, which caused him to go slightly to the left again. Mr. Speelman further testified that when the Hasselbrink car turned to its left he was only about a car length away; that he turned his car to the right first, and then Mrs. Hasselbrink turned her car to the left, in front of him; that when the collision occurred, both cars were turning; that when he had swerved to the left, his left front wheel was close to the center line—"was right on the center line." He did not think it had passed over the line. He finally said that he did not know whether his left rear wheel got on any part of the center line; but that the left rear wheel had gone farther over than his left front wheel. He concluded by saying that his car had first weaved to the right and then to the left; that when the wind blew his car, he put on his brakes "a little bit," and the rear end of his car "slid over"—it threw him a little more to the left—and then he saw Mrs. Hasselbrink coming across the road at him and that is all that he remembered. There is a considerable element of confusion, if not contradiction, in various parts of Mr. Speelman's testimony.

Mrs. Hasselbrink testified that there was practically no wind blowing, and that appellee had been approaching on his side of the road, until "I saw him suddenly turn over into our lane, and he was so close to me that I had just a split second to turn to avoid a head-on collision, and almost simultaneously, he hit the right door of our car; he was right in front of my car in my lane. * * * He was as much in my lane as I was myself coming in the opposite direction. * * * I had just a minute's time to avoid a head-on collision. That is why I turned the car very quickly, jammed on the brakes * * * and just as I did, there was almost a simultaneous impact. * * * I was in the car trying to avoid a head-on collision, death itself. I might have reached the center line (of the highway) * * * maybe the bumper may have been over the line, but I know that I couldn't possibly have gotten any farther until he hit me and turned me completely around."

Mr. Hasselbrink testified that "at the last minute I could see [Mr. Speelman] was attempting to pull to his right;" that the collision happened practically simultaneously as his wife turned to the left and Mr. Speelman turned to the right; that the collision was in the center, or just over into the east half of the highway; that the left front of the Speelman car hit the right front of the Hasselbrink car.

Negligence consists of doing something which a reasonable person, or one of ordinary prudence and care, would not have done, or omitting to do something which such a person would have done, under the same or similar circumstances. Baltimore & P. R. Co. v. Jones, 95 U.S. 439, 24 L.Ed. 506; Interstate Circuit v. Le Normand, 5 Cir., 100 F.2d 160, 161.

Did Mrs. Hasselbrink do something which an ordinarily prudent person would not have done, or omit to do something that an ordinarily prudent person would have done, under the circumstances? The evidence on behalf of appellants is to the effect that Mrs. Hasselbrink quickly turned from her right side of the road to the left when appellee had suddenly driven over the line into the lane of her on-coming car, and that appellee had then turned his car to the right almost simultaneously with Mrs. Hasselbrink's turning hers to the left. Mr. Speelman admits that immediately prior to the collision, the front end of his automobile swerved over, so that its *left front* wheel was *on* or near the center line, and that its *left rear* wheel went over a little farther than the left front wheel. A part of the body of the Speelman's car, then, must have been, according to appellee's testimony, on Mrs. Hasselbrink's side of the highway immediately before the collision. As Mrs. Hasselbrink said, "I don't know how the back can get over on the other side and the front stay there." Mr. Speelman testified that Mrs. Hasselbrink did not change her course, or move to her left, until after he had swerved to her side of the highway. Mr. Speelman testified that the collision occurred two feet over the center line and on his side of the highway. Mr. Hasselbrink said that it occurred in the center or just over in the easterly, or Mr. Speelman's, side of the highway. Mrs. Hasselbrink said she couldn't tell the exact point; that she had just barely turned; that her car might have reached the center line, or just over the line. "I was headed out of his way. * * * I was in my lane when I turned; and it was just a split second when I turned. * * * He was in my lane completely and he must have been when he hit my car. Naturally I couldn't stay right there in that same spot."

Appellants' evidence sustain their claim that just before the collision Mrs. Hasselbrink was confronted by a sudden emergency. If the driver of a motor vehicle is suddenly confronted by the wrongful act of a third person, the emergency doctrine applies. It is held that where a bus was being driven along the proper side of the road, and an automobile was approaching on the wrong side of the road, so as to create a danger

of collision, an emergency was created as a matter of law. Morrow v. Southeastern Stages, 68 Ga.App. 142, 22 S.E.2d 336. In the above case it was held that where the evidence was conflicting as to whether the automobile or the bus was being driven on the left side of the highway as they approached each other, the trial court properly charged the jury that the bus driver had the right, if on the proper side of the highway, and faced with impending collision, to cross to the left side of the highway in an attempt to avoid the collision. Where motorists were proceeding in opposite directions and each was on his proper side of the highway, when one suddenly made a left turn just before an intersection, an emergency was created for which the motorist attempting to make a left turn was solely to blame. The emergency rule, when properly applied, excuses inaction on the part of an innocent driver in his proper lane of traffic, when suddenly confronted with an automobile on the wrong side of the road. Gross v. Gross, 7 Cir., 169 F.2d 199.

If the collision occurred on Mrs. Hasselbrink's side of the highway, it was for the jury to say whether, when appellee drove into her lane, she did what a reasonably prudent person would have done under similar circumstances, or omitted to do what such a reasonably prudent person would have done. Should she have turned to the right, or to the left, or continued in the same direction? If the collision occurred at the center line of the highway, should she have turned to the right, or continued on in the direction she was going? If the collision occurred on the easterly side of the highway, or on Mr. Speelman's side, was she justified in turning to the left after he had come directly into her path, and then at the last instant attempted to turn right again?

■ We must accept appellants' testimony, for the purpose of determining whether their proofs justified a charge on the issue of "sudden emergency." Mr. Speelman's car had been weaving down the highway as he approached them; the wind had carried him over to the left; and an instant before the accident, according to Mrs. Hasselbrink, he had driven his car completely over into the lane of the on-coming car of appellants. Just before they collided, all parties and witnesses to the accident say that, as Mrs. Hasselbrink suddenly turned to the left, Mr. Speelman also suddenly turned in the same direction. Such proof presented the issue whether Mrs. Hasselbrink was confronted by a sudden emergency, and whether she acted as an ordinarily prudent person would have acted when confronted by a like emergency.

■ We cannot say, under the record in this case, that because the collision may have occurred one foot or two feet across the center line of the highway, or appellee's side of the road, that the requested instruction, as to "sudden emergency," was based upon a hypothesis unsupported by evidence, or contrary to the theory upon which appellants founded their complaint. Here two cars approached each other, each at a speed of 35 miles an hour. Suddenly, according to appellants' evidence, appellee's car turned directly into the path of their oncoming car. When only a car length apart, both cars turned almost simultaneously, and collided almost immediately. It challenges belief that under such circumstances, either driver would know the exact point of impact, since both were intent upon the other. Enough appears to present the issue of "sudden emergency." If the collision took place on appellee's side of the road, the question whether plaintiff was excused from complying with the statute requiring one to drive his car on the right half of the roadway, (with certain exceptions not here relevant), would be for the jury. See Williams v. Powers, 6 Cir., 135 F.2d 153.

■■ It is submitted by counsel for appellee that the court should not be required to charge on an issue not pleaded and not supported by substantial evidence. It is true that the issue of "sudden emergency" was not pleaded by the plaintiff appellants; but without discuss-

ing the question whether such emergency should be pleaded by plaintiff, it is the rule that when issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendments as may be necessary to cause them to conform to the evidence and to raise these issues may be made, upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. Rule 15(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. In J. J. Theatres v. Twentieth Century-Fox Film Corp., 2 Cir., 212 F.2d 840, in reversing the judgment of the District Court on such an issue of pleading, the Court of Appeals held that in an action for conspiracy, where the evidence was sufficient to sustain the claim based on a certain theory not set forth in the pleadings, the case should be submitted to the jury as though the complaint were sufficient to state such a claim, since the complaint may be deemed amended to conform to the proof, even where such holding results in a reversal of the judgment of the District Court. Rule 15(b), allowing amendments to conform to the evidence, permits amendments to be made by any party and is not limited to successful litigants. Bauler v. Pressed Steel Car Co., D.C., 81 F.Supp. 172. In Katz Drug Co. v. Katz, D.C., 89 F.Supp. 528, 536, the court said: "Though laches was not pleaded, the evidence in the record clearly establishes such a defense. Under Rule 15(b), Federal Rules of Civil Procedure, 28 U.S.C.A., the issue may be treated as though it were properly raised." As we have said, the proofs on the part of appellants disclosed that Mrs. Hasselbrink was confronted by a sudden emergency. Were it necessary to plead the emergency, as an excuse for an act that might otherwise constitute contributory negligence, the pleadings, in the light of the evidence adduced, are deemed to be so amended.

██ As to appellee's claim that appellants failed to save for review the question of the trial court's refusal to instruct on the issue of emergency, by reason of neglecting to object to the instructions as given, counsel for appellants stated at the conclusion of the court's charge: "Plaintiffs object to the refusal of the court to charge on emergency, as an admission, as previously submitted to the court." The inclusion of the phrase, "as an admission," in the objection, makes for some obscurity. Counsel suggests that it means "as an excuse." However, there seems no question that the objection informed the court that plaintiffs were complaining of his failure to charge on the issue of emergency. It is stated in appellants' brief, and not denied, that the trial judge, after receiving the submission of special requests to charge, stated that he would consider them until the next day, at which time he requested counsel to appear in chambers when he informed them that he was not going to include in his charge an instruction on the issue of "sudden emergency." Further, in denying a motion for a new trial, the court stated that all of the questions that had been raised therein, had been argued and discussed during the progress of the trial, and that counsel for plaintiffs especially stressed the claim that the court was in error in not giving an instruction on the issue of emergency. Where the record discloses that the point urged on appeal was called to the attention of the trial judge in such a manner as clearly to advise him as to the question of law involved, that is sufficient as against the contention that objections were not formally made to the instruction as given. Williams v. Powers, 6 Cir., 135 F.2d 153. The purpose of exceptions is to inform the trial court of possible errors, so that it may have an opportunity to reconsider its rulings, and, if necessary, correct them, and when there has been a full discussion of the point raised which adequately informed the court as to what the plaintiff contended was the law, the entry of a formal exception to his charge in that regard is a mere technicality. Sweeney v. United Feature Syndicate,

Inc., 2 Cir., 129 F.2d 904. Because of counsel's objection to the charge as given in the instant case, and the full discussion and consideration of the point during the progress of the trial, appellants are not precluded from raising the claim of error on the part of the court in declining to instruct, as requested, on the issue of "sudden emergency." We have held that the instruction requested by counsel should have been given.

In accordance with the foregoing, the judgment is set aside, and the case is remanded to the district court for a new trial.