Victor ROGERS, Appellant,

v.

Alfred J. DUBIEL, Appellee.

No. 139.

Supreme Court of Alaska.

July 20, 1962.

Robert A. Parrish, Fairbanks, appellant.

Charles J. Clasby, Fairbanks, appellee.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

NESBETT, Chief Justice.

At about 2:30 p. m. on January 12, 1960 appellee-defendant was driving his automobile in a westerly direction on Wendell Street in Fairbanks, Alaska. The street was covered with ice and snow, the temperature was below zero, darkness was setting in and there was ice fog. Defendant's speed was 10 to 15 miles per hour, his headlights were on and he was following 40 or 50 feet behind the automobile ahead. Defendant had approximately 6 years of experience in winter driving in Michigan and approximately 6 months of driving experience in Fairbanks immediately preceding the above date. He had driven along Wendell Street on numerous occasions prior to the day of the accident.

Appellant-plaintiff's truck was parked hard against the snow berm on the shoul-

der of Wendell Street facing west with its headlights on. Plaintiff was standing behind his truck, out of the travelled portion of the roadway, waiting for the line of approaching westbound automobiles to pass before attempting to get into his truck on the driver's side.

Observing that the car ahead of him was slowing down, defendant applied his brakes. At that time he was about 20 feet behind plaintiff's parked truck. When his brakes were applied, the rear end of defendant's vehicle commenced to skid to the driver's right, and toward plaintiff's truck. The side clearance between defendant's vehicle and plaintiff's truck would have been 3 or 4 feet if defendant had remained in the lane of traffic he was following. It was at this time that defendant first observed plaintiff standing behind his truck. Defendant testified that he then released the brake and probably pumped it in an attempt to control the slide, but without success. Defendant explained that he then turned his front wheels to his left, rather than to turn into the skid, to minimize the danger of pinning plaintiff between the rear end of his truck and defendant's car. In spite of defendant's maneuver his right front fender collided with the left rear fender of plaintiff's truck. Plaintiff was struck by defendant's automobile and, according to his testimony, he was pinned between the two vehicles.

Plantiff was badly injured and brought this suit alleging that defendant was negligent in permitting his car to go out of control and leave the line of trffic. The case was tried without a jury and the court ruled that plaintiff had failed to show by a preponderance of the evidence that defendant was negligent. Plaintiff's motion to amend the findings of fact, conclusions of law and judgment or in the alternative for a new trial was denied.

The facts leading up to plaintiff's injury, insofar as they were developed, are not in dispute. Defendant was called by plaintiff as an adverse witness. His testimony on direct and cross-examination concerning the collision supplied most of the facts upon which the question of liability was decided.

In its memorandum decision the trial court mentioned that it could not find defendant negligent under the circumstances, that it was influenced by the well established rule that the mere fact that an automobile skids does not in itself constitute negligence; that under the conditions that existed defendant's conduct was not below that of a reasonably prudent driver; his speed was not excessive and the actions he took were not of a negligent nature.

Plaintiff's main point on appeal is that in skidding out of the westbound lane of traffic, defendant violated the law [1] and since a collision resulted, the burden of proving excuse or justification for the violation fell on defendant and that he failed to discharge this burden.

We agree with appellant. The law required the defendant to operate his vehicle as nearly as practicable entirely within the lane of traffic along which he was proceeding, and that he not depart that lane until he had ascertained that he could do so with safety. This he failed to do. It is true that the street was covered by ice

---

1. Title 13, Alaska Administrative Code, section 96 (§ 2–309 of the Traffic Regulations, 1958) states:
   "Whenever any roadway has been divided into two or more clearly marked lanes for traffic the following regulations in addition to all others consistent herewith shall apply.
   "(a) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.
   "(b) * * *."
   Section 50-1-2 A.C.L.A.1949 makes highway regulations applicable to streets of municipalities. This provision was unaffected by the Alaska Highway and Public Works Act of 1957, S.L.A.1957, ch. 152.

and snow and that the various lanes of traffic were not "clearly marked" in the sense that painted lines were visible. On the other hand, the testimony clearly establishes that there were definite recognized lanes of traffic then being used by the considerable traffic which was proceeding along the street in both directions. By his own testimony, defendant was proceeding along a recognized lane of traffic following other vehicles occupying the same lane. It was a route he had travelled many times before and with which he was familiar. The fact that each lane was not, and could not have been, marked by a painted line upon the ice and snow does not relieve defendant of the responsibility of complying with the law under the circumstances of this case.

■ Defendant's description of his acts immediately preceding the collision furnish the controlling facts. No specific act of commission constituting negligence was brought out, but a number of unanswered questions are raised by defendant's testimony. Since defendant was 40 to 50 feet behind the car ahead and only 20 feet from plaintiff's truck, which had its headlights on and which he saw, why did he decide to apply his brakes? Defendant stated that he was quite familiar with the skidding tendencies of automobiles and that he knew he was travelling on an icy street. He testified that he was gaining on the car ahead, not because he was travelling faster, but because the car ahead had slowed down at about the time it was passing plaintiff's truck. Why was the car ahead able to slow down without skidding into plaintiff when defendant was not? Had defendant's attention wandered to the extent that when it was redirected defendant was alarmed at the rate of closure and applied his brake suddenly? Defendant himself testified that immediately prior to applying his brakes he was "probably talking with my passenger". When asked why he released his brake when he commenced to slide, defendant answered: "Well, I * * * I would say it was a reaction.

I probably thought that I hit the brake too hard and that I started to slide and that if I would release the brake and perhaps pump it that I would be able to control the slide." Was it wise for defendant to apply his brakes at all under the circumstances? It is common knowledge among experienced drivers that speed can be reduced by simply reducing acceleration, by disengaging the clutch and coasting or by shifting to a lower gear and engaging the clutch. Why was not one or the other of these alternatives preferable to applying the brakes under the circumstances? Why did defendant's vehicle slide completely out of control upon the application of his brakes? This is not an invariable consequence of braking, even on ice and snow. It is common knowledge among drivers that an easy application of the brakes will often slow a vehicle down on icy surfaces without sliding. An easy application can also be a warning not to apply any additional pressure on the brakes or severe sliding may result. What degree of pressure did defendant apply? From his own testimony he may have applied excessive pressure. From the facts, we know that whatever pressure was applied resulted immediately in an uncontrollable skid. Was 10 or 15 miles per hour actually a safe speed under the conditions? The trial court found that it was not excessive although ice fog and darkness prevailed and the streets were covered by ice and snow, but we find nothing in the record to support this finding. What was the condition of defendant's brakes? Improper adjustment can cause a severe slide on road surfaces ideal for braking. What type tires was defendant using? Were driving conditions such that it was unsafe to attempt to operate a vehicle without tires adapted to snow and ice? Was the tread in such condition as to permit braking without sliding?

■ The answers to the foregoing questions could have been supplied by defendant but were not. It is true that counsel for plaintiff might have questioned defend-

ant concerning these aspects when he had defendant on the stand as an adverse witness. However, under the general view that we take, it was not necessary that he do so. Plaintiff had established a prima facie case when he showed that he was standing on the shoulder of the street in a location where he had a legal right to be and was injured by the departure of defendant's vehicle from the lane of traffic it was required to use. Thereafter the burden was on defendant to convince the trier of the facts that he was not negligent.[2]

This does not place an intolerable burden on defendant. Too often the only witness able to supply the answers to questions such as the foregoing is the defendant himself. In this case plaintiff had turned his back to the oncoming traffic and had not observed the behavior of defendant's automobile. Even if he had been observing defendant's vehicle, he would have had no knowledge of the operating techniques defendant was employing. It was aptly observed in Murphy v. Kumler:[3]

"The causes of one skidding an automobile on a wet or icy pavement are manifold, and are most often hidden within the breast and mind of the operator of the skidding car. On an icy pavement a momentary lapse of memory, a glance toward a passenger, or any other slight distraction, as well as speed or other improper handling might cause the skidding. It might even be a defect in the mechanical condition of the vehicle. Certainly it is not incumbent upon the plaintiff to show conclusively why the defendant was on the wrong side of the road or the exact cause of the skid. Only on rare instances would that knowledge be possessed by the plaintiff. * * * In a collision such as this, where one of the cars is on the wrong side of the highway and out of control, certainly it is the duty of the defendant to show that he was in that situation because of some particular reason other than his own negligence."

Since this court had not adopted a rule governing proof of negligence in situations such as this, the trial court applied the general rule requiring plaintiff to prove the defendant's negligence by a preponderance of the evidence. Under that rule it is probably true that plaintiff did not prove by a preponderance of the evidence that defendant was negligent. Nor is it likely that a plaintiff ever would be able to produce that quantity of proof where the only evidence to be had must come from the driver, the defendant. The fact that defendant failed to mention in his testimony anything that could be classified as an affirmative act of negligence is not sufficient to relieve him from responsibility. The controlling fact is that his automobile skidded out of his control and into a portion of the roadway that it was not permitted to enter except with safety.

It has frequently been held that skidding, in and of itself, is not evidence that it was caused by negligence. But this is not a rule of law sufficient in scope to be dispositive of the ordinary case. Here the defendant decided he should slow down, applied the brakes and skidded out of control. Should he, with only that explanation, be excused from the consequences? We think not. To so excuse him would be to assume that the conditions of weather and street surface were not so dangerous that he should not have been operating his vehicle at all; that he was actually faced with the necessity of slowing down through no lapse of attention, while driving under

2. Bergstrom v. Ove, 39 Wash.2d 78, 234 P.2d 548, 551 (1951); see also Corcoran v. Pacific Auto Stages, 116 Cal.App. 35, 2 P.2d 225, 226 (1931), Cook v. Raf-ferty, 200 Wash. 234, 93 P.2d 376, 378 (1939).

3. 344 Ill.App. 287, 100 N.E.2d 660, 662–663 (1951).

dangerous conditions; that he chose the most effective and least dangerous method of reducing speed; that he was non-negligent in handling the automobile after it commenced to skid and that the vehicle was in all respects equipped and maintained in such condition that it could safely be operated on the streets of Fairbanks under the conditions that prevailed at the time of the accident.

The judgment is reversed and the case is remanded to the trial court with the direction that judgment should be entered for the plaintiff.