**Mary Bernice WILSON and John Wesley Wilson, Appellants,**

v.

**E. H. SIBERT, d/b/a Alaska Interviewing, Appellee.**

**No. 2165.**

Supreme Court of Alaska.

May 22, 1975.

L. Ames Luce, Anchorage, for appellants.

Alan G. Sherry, Merdes, Schaible, Staley & DeLisio, Anchorage, for appellee.

## OPINION

Before RABINOWITZ, C. J., and CONNOR and BOOCHEVER, JJ.

RABINOWITZ, Chief Justice.

This is an appeal from a jury verdict in favor of appellee which has its origin in an automobile accident.

The facts are largely uncontested. Appellee Sibert was stopped in his automobile in line at the drive-in window of a bank in Anchorage. Appellant Mary Bernice Wilson was stationary in her vehicle immediately behind Sibert. According to appellee, Mrs. Wilson's car was four or five feet behind his; Mrs. Wilson testified that appellee's car was about two and a half car lengths ahead of hers. After appellee had been in line for a short period he noticed the car in front of him abruptly start backing toward him. He immediately shifted his car into reverse and backed up, colliding with the front of appellants' car with sufficient force to push a fender on appellants' car into the tire, rendering it immobile. Appellee did not sound his horn, or turn to look around, or look in the vehicle's mirror in order to ascertain if anyone was behind him prior to backing up. Appellee testified that he made the backing maneuver as a "sheer reaction" and "reflex" in order to avoid what appeared to him to be an impending collision with the car in front of him. He admitted that he did not know whether or not the car in front of him would have struck him if he hadn't moved and that he gave no conscious thought to looking back. According to him, he was "too busy getting the car in gear and . . . didn't seem to have time to do anything other than get the car moving." He became aware that someone was behind him only upon colliding with appellants' vehicle.

Mrs. Wilson testified that she was in the process of writing out a check when she suddenly glanced up to see appellee's car backing toward her. She immediately blew her horn but appellee did not stop until he collided with her.

The vehicle that was standing immediately ahead of appellee in the line, and which backed toward appellee's vehicle, departed the scene of the accident.

Appellants brought suit based on appellee's negligence to recover for Mrs. Wilson's injuries and her husband's consequent loss of services and consortium. Appellee denied his own negligence and interposed the defense of negligence of a third party, namely the driver ahead of him whose backing up had set off the chain of events at issue here.[1]

At the close of their case, and again at the close of the evidence, appellants moved for a directed verdict on the question of appellee's negligence. These motions were denied by the superior court, which concluded that liability as a matter of law had not been established and that the issue of negligence was properly one for the jury since appellee's testimony had raised a sufficient factual basis upon which a defense of sudden emergency could be predicated. Ultimately the trial court submitted the case to the jury with two separate instructions on the issue of negligence, over appellants' objections—one defining negligence in general[2] and the other setting forth the sudden emergency doctrine.[3] Appellants in this appeal assert that the superior court erred in denying their motions for directed verdict on the issue of liability and committed further error in giving a sudden emergency instruction.

■ Standards for determination of a motion for directed verdict are well established. The trial court is to view the evidence in its strongest light in favor of the party against whom the motion is made and is then to determine whether fair-minded jurors could differ as to the conclusions of fact that might be drawn from the evidence which was presented as to those questions.[4] If the evidence so viewed leaves room for diversity of opinion among reasonable persons, then the question should be left for the jury and the motion for directed verdict denied.[5] On appeal we apply the same standards.

Appellants argue that their motions for a directed verdict were erroneously denied because the evidence indicated a "total absence of care" by appellee and therefore conclusively established his negligence, and because appellee's action in backing his vehicle without looking or sounding his horn constituted negligence per se.

Appellants contend that the evidence shows appellee acted with a "total absence" of care because of his admitted failure to look backwards or in his mirror or to sound his horn before backing. No reasonable jury, they contend, could find in these facts any evidence that appellee exercised any care whatsoever toward Mrs. Wilson, and that therefore his negligence was conclusively established.

■ Appellants' position, however, fails to take into account the rapidity with which a person in an emergency situation may be forced to act. Appellee's testimony made reference to factual circumstances which could be viewed by the trial court as constituting an emergency situation. The law requires the jury to weigh the actions of a person charged with negligence

---

1. Appellee's third-party complaint was subsequently dismissed, apparently due to his inability to conclusively establish the identity of the third party.

2. *See* note 10 *infra.*

3. *See* note 11 *infra.*

4. Otis Elevator Co. v. McLaney, 406 P.2d 7 (Alaska 1965) ; City of Fairbanks v. Nesbett,

432 P.2d 607 (Alaska 1967). *See also* Mertz v. J. M. Covington Corp., 470 P.2d 532 (Alaska 1970) ; Hasselbrink v. Speelman, 246 F.2d 34 (6th Cir. 1957).

5. Mallonee v. Finch, 413 P.2d 159 (Alaska 1966) ; City of Fairbanks v. Nesbett, 432 P.2d 607 (Alaska 1967) ; Snipes v. March, 378 P.2d 827 (Alaska 1963).

against the standard of the conduct of a reasonable person in the same circumstances. When those circumstances include the presence of an emergency, that fact may justify a finding that conduct is acceptable which would be clearly unreasonable if there were no emergency. This view is adopted by the Restatement (Second) of Torts (1965), which provides at Section 296:

> (1) In determining whether conduct is negligent toward another, the fact that the actor is confronted with a sudden emergency which requires rapid decision is a factor in determining the reasonable character of his choice of action.

The comments to this section point out that this rule is applicable

> where it is created by the unexpected operation of a natural force or by the innocent or wrongful act of a third person . . . . the law does not require of the actor more than it is reasonable to expect of him under the circumstances which surround him. Therefore, the court and jury in determining the propriety of the actor's conduct must take into account the fact that he is in a position where he must make a speedy decision between alternative courses of action and that, therefore, he has no time to make an accurate forecast as to the effect of his choice. The mere fact that his choice is unfortunate does not make it improper even though it is one which the actor should not have made had he had sufficient time to consider all the effects likely to follow his action.[6]

■ In accord with this rule, the jury was bound to evaluate the reasonableness of appellee's actions in light of the evidence which showed him to be in an emergency situation when he took these actions.

6. Restatement (Second) of Torts § 296, Comments (a) and (b) at 64–65 (1965).

7. *See* Ferris v. Patch, 119 Vt. 274, 126 A.2d 114 (1956).

8. Restatement (Second) of Torts § 286 (1965) provides:

Reasonable minds could differ as to the propriety of his split-second decision to attempt to avoid an apparent impending collision by quickly shifting into reverse and backing up. That he failed to pause to warn others of his actions, or to ascertain that he could in fact back safely, are failings which clearly must be weighed in light of the apparent need to act almost instantaneously. The question is not, as appellants argue, whether this court will determine as a matter of law that persons in circumstances such as those faced by appellee owe "no duty of care" to those around them, but whether the determination of the nature and extent of that duty is one properly left to the jury.[7] We hold that a reasonable difference of opinion could exist as to the proper course of action under the circumstances presented by this record. We therefore conclude that the issue of appellee's negligence was properly submitted to the jury for resolution.

The evidence that an emergency situation may have existed when appellee started backing his car up is dispositive of appellants' second theory for requiring a directed verdict as well. Appellants' contention that negligence per se was established is based on appellee's alleged violation of 13 AAC 02.485, which provided in part:

> (a) A driver of a vehicle may not back the vehicle unless the movement can be made with safety and without interfering with the traffic.

Assuming, arguendo, that this traffic regulation is applicable to appellee's actions, then the analysis of the applicability of this court's negligence per se rule to the facts of the case at bar becomes appropriate. In Ferrell v. Baxter, 484 P.2d 250 (Alaska 1971), we adopted the rule set forth in Restatement (Second) of Torts §§ 286, 288A, and 288B (1965).[8] This rule al-

> The court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment of an administrative regulation whose purpose is found to be exclusively or in part
> (a) to protect a class of persons which includes the one whose interest is invaded, and

lows the trial court to adopt certain relevant legislative enactments or administrative regulations as the standard of conduct of a reasonable man, so that violation of the enactment or regulation will constitute negligence per se. However, an important limitation on the rule is found in § 288A, which provides:

(1) An excused violation of a legislative enactment or an administrative regulation is not negligence.

(2) Unless the enactment or regulation is construed not to permit such excuse, its violation is excused when

. . . . . .

(d) [the actor] is confronted by an emergency not due to his own misconduct . . . .

■ Appellee's testimony clearly made reference to factual circumstances which could be viewed as an appropriate "emergency" under this rule. Study of 13 AAC 02.485(a) and the statute under which this regulation was promulgated[9] reveals no

reason why the regulation should be construed to prohibit an emergency excuse. Nor was there any evidence that the "emergency" arose because of appellee's own misconduct. We conclude that application in this case of the per se negligence rule in force in Alaska leaves a factual question for determination by the jury regarding existence of an emergency excuse, under § 288A(2)(d), *supra,* for violation of the regulation. Thus, the superior court did not err in denying appellants' motions for a directed verdict.

Appellants also contend that it was reversible error for the superior court to submit to the jury a specific instruction on sudden emergency. They do not contend that the emergency instruction was an erroneous statement of law, but they do contend that it had an improperly prejudicial effect on the jury. The superior court's general instruction on negligence[10] sufficiently informed the jury of the proper standard to apply, appellants contend, and the additional and separate sudden emer-

(b) to protect the particular interest which is invaded, and
(c) to protect that interest against the kind of harm which has resulted, and
(d) to protect that interest against the particular hazard from which the harm results.
Restatement (Second) of Torts § 288A (1965) provides:
(1) An excused violation of a legislative enactment or an administrative regulation is not negligence.
(2) Unless the enactment or regulation is construed not to permit such excuse, its violation is excused when
(a) the violation is reasonable because of the actor's incapacity;
(b) he neither knows nor should know of the occasion for compliance;
(c) he is unable after reasonable diligence or care to comply;
(d) he is confronted by an emergency not due to his own misconduct;
(e) compliance would involve a greater risk of harm to the actor or to others.
Restatement (Second) of Torts § 288B (1965) provides:
(1) The unexcused violation of a legislative enactment or an administrative regulation which is adopted by the court as defining the standard of conduct of a reasonable man, is negligence in itself.

(2) The unexcused violation of an enactment or regulation which is not so adopted may be relevant evidence bearing on the issue of negligent conduct.

9. AS 28.05.030(a)(1).

10. Instruction No. 9 provided:
 In her complaint in this action and by her testimony plaintiff Mary Bernice Wilson claims that she was injured as a result of the negligence of the defendant. All questions of negligence or absence of negligence are for your determination.
 In this connection, it is necessary to know what is meant by negligence. Negligence means the want of ordinary care; that is, the want of such care as an ordinarily reasonable and prudent person would exercise under like circumstances, and so, in determining whether or not the Defendant was negligent on the occasion in question, you must determine whether he did or did not exercise ordinary care in what he was doing or attempting to do at or immediately before the time of the accident; that is to say, whether he did or did not exercise such care as an ordinarily reasonable and prudent person should exercise under like circumstances. If he failed to exercise such ordinary care, he was negligent; but if he did exercise such ordinary care, then he was not negligent.

gency instruction [11] unfairly and unnecessarily emphasized that particular aspect of the evidence.

It is conceded by both parties that the test of negligence in emergency situations is the same as that to be applied in other cases: that what is required is the conduct of a reasonable man of ordinary prudence under the circumstances.[12] Thus, when a general instruction on negligence properly states this rule, a separate instruction emphasizing that the rule still applies in emergency situations is in a sense repetitious. We must now determine whether in this case the giving of a sudden emergency instruction was prejudicial error as well. Whether a separate sudden emergency instruction would be prejudicial as well as repetitious is ordinarily a matter which is committed to the trial court's discretion, and one which we will not disturb in the absence of a showing of an abuse of discretion.[13]

The sudden emergency doctrine has been a factor in several of our prior decisions. In Snipes v. March, 378 P.2d 827 (Alaska 1963), the jury had been given a sudden emergency instruction, but after a verdict for the plaintiff, the judge gave judgment n. o. v. for the defendant, apparently because of his finding that defendant was faced with an emergency not of his own making. We reversed the trial judge after finding that there were evidentiary grounds upon which the jury could reasonably have concluded that the defendant had sufficient time to deliberate and weigh alternative courses so that he was not in a true emergency situation. We concluded that the trial judge

> [w]ould have been justified in [setting aside the jury's verdict] only if the evidence was such that fair minded men, in the exercise of reasonable judgment, could not differ on the question of defendant's negligence, but could only come to the conclusion that he was not negligent. (378 P.2d at 828–29).

Our opinion in *Snipes* can be read as an implied acceptance of the propriety of the sudden emergency instruction.

In Meyst v. East Fifth Avenue Service, Inc., 401 P.2d 430 (Alaska 1965), the appellant alleged error in the trial judge's refusal to give a separate sudden emergency instruction. We held that because the general negligence instruction which was given adequately informed the jury of their duty to judge the appellant's behavior in the circumstances as they existed at the time, a specific emergency instruction was not necessary and so refusal to give it was not error. Essentially the same situation arose in Ferrell v. Baxter, 484 P.2d 250 (Alaska 1971), where the trial court refused to supplement a general negligence instruction with an emergency instruction because the latter was "redundant" and therefore "improper". We upheld the trial judge's refusal on the basis of *Meyst,* and added:

> We note that, while in this case as in *Meyst,* the court did not err in refusing to give the requested instructions, we

---

11. Instruction No. 10 provided:

A person who, without negligence on his part, is suddenly and unexpectedly confronted with peril arising from either the actual presence of, or the appearance of, imminent danger to himself or to others, is not expected nor required to use the same judgment and prudence that is required of him in the exercise of ordinary care in calmer and more deliberate moments. His duty is to exercise only the care that an ordinarily prudent person would exercise in the same situation. If at that moment he does what appears to him to be the best thing to do, and if his choice and manner of action are the same as might have been followed by any ordinarily prudent person

under the same conditions, he does all the law requires of him, although in the light of afterevents, it should appear that a different course would have been better and safer.

12. On the sudden emergency doctrine in general, see W. Prosser, Law of Torts § 33 (4th ed. 1971) ; Harper and James, Law of Torts § 16.12 (1956) ; Blashfield, Automobile Law and Practice §§ 102.26 (1965) ; Annot., 80 A.L.R.2d 5 (1960).

13. Jones v. Heinrich, 49 Cal.App.2d 702, 122 P.2d 304 (1942) ; Raz v. Mills, 233 Or. 452, 378 P.2d 959 (1963) ; Thomas v. Martin, 202 F.Supp. 540 (E.D.Va.1961).

cannot say that it would have erred by giving them.[14]

Although a number of jurisdictions have concluded that it is prejudicial error to refuse to give an emergency instruction when the facts warrant,[15] it seems to be predominantly accepted that it is not prejudicial error for a trial court to give a "superfluous" sudden emergency instruction. Emergency instructions have been struck down where they incorrectly state the law or where there is insufficient evidence to support an inference of an emergency situation,[16] but appellants have cited to us no case in which such evidence did exist and a correct emergency instruction was nonetheless struck down as prejudicial.[17] Our review of the record in this case reveals no indication that the giving of the emergency instruction improperly influenced the jury. Accordingly, we affirm the judgment.[18]

Affirmed.

ERWIN, J., not participating.

BOOCHEVER, Justice (dissenting).

Sibert was parked at a drive-in window of a bank, a place where he should have anticipated that another car was likely to park behind him. Viewing the evidence in the strongest light in his favor, Mrs. Wilson parked approximately four or five feet behind his vehicle. When he noticed the car in front of him start to back up, he immediately backed up, without looking in his rear view window or sounding his horn. The horn might have served to stop the car in front of him from backing further. Looking in the rear view mirror would have revealed Mrs. Wilson's vehicle resulting in probable prevention of the collision. In any event, he admitted he did not know whether the car in front of him would have struck him if he hadn't moved.

While I agree with the majority as to the general application of the emergency doctrine, I do not believe that in the emergency here involved, Sibert acted with requisite care. The emergency doctrine as adopted by the Restatement (Second) of Torts (1965) § 296 specifies:

(1) In determining whether conduct is negligent toward another, the fact that the actor is confronted with a sudden emergency which requires rapid decision is a factor in determining *the reasonable*

14. 484 P.2d at 270.

15. *See, e. g.,* Stickel v. Durfee, 88 Cal.App. 2d 402, 199 P.2d 16 (1948) ; Emery v. Los Angeles Ry. Co., 61 Cal.App.2d 455, 143 P.2d 112 (1943) ; Car & Gen. Ins. Corp. v. Keal Driveway Co., 132 F.2d 834 (5th Cir. 1943) ; DeKoning v. Williams, 47 Wash.2d 139, 286 P.2d 694 (1955).

16. *See* Annot., Instruction on Sudden Emergency in Motor Vehicle Cases, 80 A.L.R.2d 5 (1960), and cases cited therein.

17. Appellants cite three Illinois cases for the proposition that an emergency instruction in cases such as this may be so prejudicial as to deprive plaintiffs of their right to a fair trial. However, the cases do not support their contention. In Moore v. Daydif, 7 Ill. App.2d 534, 130 N.E.2d 119 (1955), the court found the instruction improper because "there is not sufficient evidence in the record on which to sustain the giving of this instruction." (130 N.E.2d at 121). In addition, it was one of an excessive number of instructions which overemphasized contributory negligence. In Reese v. Buhle, 16 Ill.App.2d 13, 147 N.E.2d 431 (1957), an emergency instruction was held improper because it was "inconsistent" with the defendant's legal duty to anticipate certain types of conduct, and hence was inappropriate under the facts of that case. And in Minnis v. Friend, 360 Ill. 328, 196 N.E. 191 (1935), it was held proper to refuse to give an emergency instruction since it contained basically the same law already set forth by the court in a general negligence instruction. This holding, with which our own decisions in Meyst v. East Fifth Avenue Service Inc., 401 P.2d 430 (Alaska 1963) and Ferrell v. Baxter, 484 P.2d 250 (Alaska 1971), agree, is not dispositive of the issue in the instant case. Moreover, the Illinois courts have subsequently found emergency instructions to be nonprejudicial error. *See* Logue v. Williams, 111 Ill.App. 2d 327, 250 N.E.2d 159 (1969).

18. We do not mean by this holding to exclude the possibility that an emergency instruction could be prejudicial to a litigant. Where, for example, the evidence of an emergency is extremely attenuated, an emergency instruction may become prejudicial. *See* Spillers v. Simons, 42 Mich.App. 101, 201 N.W.2d 374 (1972) ; Flynn v. Little, 141 N.E.2d 182 (Ohio App.1957) ; Squires v. McLaughlin, 44 Wash.2d 43, 265 P.2d 265 (1953).

*character* of his choice of action. (emphasis added)

The question presented is the "reasonable character of his choice of action". A driver may be presented by an emergency such as skidding on some ice which could not reasonably have been anticipated. Despite the emergency, if he forcefully and continuously applies his brakes, he will be found to have driven negligently.[1] Even though he acted more or less instinctively, such application of brakes is not a reasonable choice. Drivers must be prepared for certain types of emergencies to the extent that they take proper precautionary steps to avoid injury to themselves and others.

It seems to me that at the very least, Sibert should have honked his horn or looked at his rear view mirror. This is not the usual type of emergency as when a driver proceeding on a highway is confronted by a person, animal or other vehicle suddenly appearing directly in the path of his vehicle. In that situation, he must make an instantaneous decision whether to proceed into the obstacle or swerve to either side. Either decision may be reasonable under the circumstances, even though if more time were available, the driver could better determine which decision to make.

Here, however, the manner of exercising the decision under no circumstances can be considered reasonable. Sibert was chargeable with knowledge that a car was likely to be behind him. In the admitted emergency confronting him, he had the choice of staying still hoping the other car wouldn't strike him, staying still and blowing his horn to alert the backing vehicle or of backing himself. I see no problem with his exercising the latter course of action as a reasonable choice, but I do not think that the emergency justifies his backing without looking in his mirror or sounding his horn. In the absence of such precautions, his action was not of "reasonable character".[2]

---

1. *See* Rogers v. Dubiel, 373 P.2d 295 at 297 (Alaska 1962), involving application of brakes while driving on ice, although not referring to the emergency doctrine.

2. Restatement (Second) of Torts (1965) § 296(1) quoted at page 1 (of dissent) *supra*.

Backing a vehicle without looking or sounding a warning constitutes negligence. *See* Brandes v. Freitas, 116 Cal.App. 459, 2 P.2d 830, 831 (1931). Embry v. Reserve Natural Gas Co., 12 La.App. 97, 124 So. 572, 576 (1929). The cases do not, however, involve the emergency doctrine.