416 P.2d 8 (1966)
Sherwood W. MATHIS and Acme Electric Co., Petitioners,
v.
Kathleen HILDERBRAND, a minor, by her Father and Next Friend, Barnie Hilderbrand, and Barnie Hilderbrand, Individually, Respondents.
No. 694.
Supreme Court of Alaska.
June 20, 1966.
Concurring Opinion July 15, 1966.
Edward A. Merdes, McNealy & Merdes, Fairbanks, for petitioners.
No appearance for respondents.
Before NESBETT, C.J., and DIMOND and RABINOWITZ, JJ.
NESBETT, Chief Justice.
The issue presented for review is whether a plaintiff in a personal injury action waives the physician-patient privilege by the commencement of the action so as to permit his attending physician to testify on pre-trial deposition with respect to the injuries sued upon.
The respondent father commenced this negligence action on behalf of his minor child for damages for personal injuries. Petitioners propounded interrogatories which provided little information as to the injuries sustained by the child. Petitioners then noticed the child's physician for the taking of a deposition. At the noticed time respondents' attorney advised the physician that the minor claimed the physician-patient privilege and instructed him not to testify. The physician accordingly refused to testify.
Petitioners then moved the court to require the physician to testify at a rescheduled deposition, which motion was denied.
We have granted review.
The physician-patient privilege has never been recognized in England, nor at common law in the United States. According to Professor Wigmore, New York was the first state to establish the privilege by statute in 1828, followed by Missouri in 1835 and in time by approximately two-thirds of the states.[1] The New England states have never recognized the privilege.[2]
In Alaska the privilege is set out in Rule of Civil Procedure 43(h) (4) and states:
(4) Physician-Patient Privilege. A physician or surgeon shall not, against the objection of his patient, be examined in a civil action or proceeding as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient.[3]
*9 The primary reason for the privilege has been stated by the United States Supreme Court to be:
* * * to exclude the physician's testimony, at the patient's option, respecting knowledge gained at the bedside, in view of the very delicate and confidential nature of the relation between the parties. * * * Manifestly, the patient occupies, for the time, a dependent position. The chief policy of the statute, as we regard it, is to encourage full and frank disclosures to the medical adviser, by relieving the patient from the fear of embarrassing consequences. The question of dealing justly as between the patient and third parties is a secondary consideration. * * *[4]
Increasingly, distinguished legal commentators have questioned the validity of the privilege and have advocated either its drastic curtailment or its abolition. Professor Wigmore has said:
Of the kinds of ailments that are commonly claimed as the subject of the privilege, there is seldom an instance where it is not ludicrous to suggest that the party cared at the time to preserve the knowledge of it from any person but the physician. From asthma to broken ribs, from influenza to tetanus, the facts of the disease are not only disclosable without shame, but are in fact often publicly known and knowable by everyone-by everyone except the appointed investigators of truth.
* * * * * *
Ninety-nine per cent of the litigation in which the privilege is invoked consists of three classes of cases 
Professor Wigmore summarizes these as:
(1) Actions on policies of life insurance where deceased's representations of his health are involved.
(2) Actions for bodily injury.
(3) Testamentary actions where testator's mental capacity is involved.
Professor Wigmore further states:
In all of these the medical testimony is absolutely needed for the purpose of learning the truth. In none of them is there any reason for the party to conceal the facts, except as a tactical maneuver in litigation.[5]
Professor McCormick has described some of the undesirable workings of the physician-patient privilege as:
1. The suppression of what is ordinarily the best source of proof, namely, the physician who examined and treated the patient, upon what is usually a crucial issue, namely, the physical or mental condition of the patient.
2. The one-sided view of the facts upon which the court must act when it hears the story of the patient and some doctors selected by him but allows the patient to close the mouth of another doctor whom he has consulted, who would contradict them.
3. The complexities and perplexities which result from a statute which runs against the grain of justice, truth and fair dealing. These perplexities inevitably produce a spate of conflicting and confusing appellate decisions, and encrust the statutes with numerous amendments, reaching for but never attaining the reconciliation of the privilege with the needs of justice.[6]
*10 In California it is provided by statute that the bringing of an action to recover damages for personal injuries shall be deemed to be a consent by the plaintiff that any physician who prescribed for or treated the plaintiff shall be permitted to testify.[7]
In Awtry v. United States,[8] a medical malpractice suit brought under the Federal Tort Claims Act, the plaintiff claimed the privilege provided by New York statute with respect to interrogatories propounded. The court said:
The nature of this action for malpractice is such that the plaintiff cannot possibly try it without waiving his statutory privilege (by testifying at the trial), if he has not done so already. If the plaintiff goes to trial without waiving his privilege the defendant would undoubtedly have the right to apply for and obtain a suspension of the trial to enable the defendant to go into the subject matter which plaintiff has claimed to be privileged and which is material and necessary in its defense.
The court went on to hold that whether the privilege was governed by state or federal law, the plaintiff would not be permitted to continue his action and at the same time deny to defendant the right to avail itself of the pre-trial procedures necessary to prepare its defenses.[9]
Courts commonly hold that the plaintiff waives the privilege when he voluntarily testifies concerning the injuries being sued upon. Increasingly it is being held that common sense dictates against enforcing the privilege until it has actually been waived during trial, as it almost invariably must be, and then in fairness being required to grant the defendant's request for a continuance to meet the new matter disclosed.[10]
We are convinced that a rigid enforcement of the privilege under the facts of this case would serve no useful purpose and might result in injustice. We accordingly hold that the plaintiffs in this personal injury action waived the physician-patient privilege by the commencement of the action to the extent that attending physicians may be required to testify on pre-trial deposition with respect to the injuries sued upon.
The order of the trial court is set aside. Further proceedings may be had in the case consistent with the views expressed in this opinion.
RABINOWITZ, Justice (concurring).
Although I agree with the result reached by the court in this matter, I fail to find any "facts of this case" which distinguishes it from the ordinary personal injury action. In other words, I am of the opinion that there is no basis disclosed in this record, or in theory, for limiting the court's holding to the facts of this case. My understanding of the court's reasoning is that the commencement of an action for personal injuries constitutes a waiver by the plaintiff of the physician-patient privilege in that action.
I think it also appropriate to mention that Civ.R. 35(b)'s recognition of a physician-patient privilege in personal injury litigation is now abolished together with Civ.R. 35(b)(2)'s narrow provision for waiver of the privilege in regard to litigation of this character.
NOTES
[1] 8 Wigmore, Evidence, § 2380 (McNaughton rev. 1961).
[2] McCormick, Evidence, § 101, note 5 (1954).
[3] But see AS 23.30.095(e) of the Workmen's Compensation Act which provides that no fact relative to the injury or claim, communicated to or otherwise learned by a physician who attended or examined the employee is privileged. See also: AS 17.10.170(b) providing that information communicated to a physician to unlawfully procure narcotics is not privileged.
[4] Arizona & N.M. Ry. Co. v. Clark, 235 U.S. 669, 676-677, 35 S.Ct. 210, 212, 59 L.Ed. 415, 419 (1915).
[5] 8 Wigmore, op. cit. supra note 1, § 2380 (a). See also: McCormick, op. cit. supra note 2, § 101. Chafee, Privileged Communications; Is Justice Served or Obstructed by Closing the Doctor's Mouth on the Witness Stand?, 52 Yale L.J. 607 (1943).
[6] McCormick, op. cit. supra note 2, § 108.
[7] Cal. Code of Civil Procedure Ann. § 1881 (4) (Deering 1959); San Francisco Unified School Dist. v. Superior Court, 55 Cal.2d 451, 11 Cal. Rptr. 373, 359 P.2d 925, 926, 82 A.L.R.2d 1156 (1961).
[8] 27 F.R.D. 399, 401 (S.D.N.Y. 1961).
[9] To the same general effect see: Mariner v. Great Lakes Dredge & Dock Company, 202 F. Supp. 430, 434 (N.D.Ohio, E.D. 1962); See also: Randa v. Bear, 50 Wash.2d 415, 312 P.2d 640, 645 (1957); But see: Kime v. Niemann, 64 Wash.2d 394, 391 P.2d 955, 956 (1964) which appears to distinguish Randa v. Bear, 50 Wash.2d 415, 312 P.2d 640, 645 (1957).
[10] Supra notes 8 and 9.