**SECURITY INDUSTRIES, INC., Petitioner,**

v.

**William Paul FICKUS et al., Respondents.**

**No. 928.**

Supreme Court of Alaska.

April 1, 1968.

Robert C. Erwin and David H. Thorsness, of Hughes, Thorsness & Lowe, Anchorage, for petitioner.

Charles J. Clasby, of Collins & Clasby, Fairbanks, for respondent Robertshaw Controls Co.

Howard Staley, of Merdes, Schaible, Staley & DeLisio, Fairbanks, for respond-

ents Jim Thompson Sales, Inc. and James A. Thompson, Jr.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

RABINOWITZ, Justice.

This case raises first-impression discovery questions concerning expert witnesses. In the complaint which was filed in the superior court, it was claimed that Harold G. Fickus, Jr., purchased from respondent Jim Thompson Sales, Inc. a 1963 Ford ¾ Ton Pickup with a 1965 Security Industries traveller camper which, among other accessories, contained a furnace, oven, and gas lamp. It was further alleged that the camper unit was manufactured by petitioner Security Industries, Inc.; the furnace by respondent Utah Hydro Corporation; the oven by respondent Robertshaw Controls Company; and the gas lamp by respondent Springer Co., Inc. Through some defect in the camper unit itself, or in the above-mentioned accessories, Harold Fickus, Jr.

and Carol Ann Fickus died of asphyxiation and Dorothy Jean Fickus was injured by the same "fumes or gases." [1] The subject causes of action for wrongful death, survival, and personal injuries were grounded upon theories of negligence (failure to warn of defects), breach of implied warranties (fitness for purposes intended), and breach of express warranties (in regard to materials and workmanship).

After issue was joined, petitioner Security Industries moved, pursuant to Civil Rule 34, for

> production of all written reports furnished to and/or in the possession of all plaintiffs and defendants concerning any examination, testing, operation or observation of any of the foregoing of the camper unit in question or any part thereof including, but not limited to, the Springa-Lite L.P. light contained in the camper unit. [2]

The superior court entered an order denying petitioner's discovery motion. [3] From

---

1. It was specifically alleged that "at the time of the deaths and injuries referred to * * * the gas lamp and the pilot lights in the oven and furnace were lighted, and the fumes resulting from such fires, or one of them, or a combination of them, resulted in the asphyxiation of Harold George Fickus, Jr. and Carol Ann Fickus, and the injuries of Dorothy Jean Fickus."

2. Civ.R. 34 provides in part:

   Upon motion of any party showing good cause therefor and upon notice to all other parties, and subject to the provisions of Rule 30(b), the court in which an action is pending may—
   (1) order any party to produce and permit the inspection and copying or photographing, by or on behalf of the moving party, of any designated documents, papers, books, accounts, letters, photographs, objects, or tangible things, not privileged, which constitute or contain evidence relating to any of the matters within the scope of the examination permitted by Rule 26(b) and which are in his possession, custody or control * * *.
   As to the scope of examination, Civ.R. 26(b) states that:
   Unless otherwise ordered by the court * * * the deponent may be examined

regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the examining party or to the claim or defense of any other party, including the existence, description, nature, custody condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of relevant facts. It is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence.

3. Respondent Robertshaw Controls Co. filed opposition to petitioner's discovery motion. In objecting to the discovery requested, this respondent cited the superior court's denial of discovery in Hernandez v. Usibelli Coal Co., Civil No. 66–33, Superior Court of Alaska, Fourth Judicial District. Respondent Utah Hydro Corp. had no objection to furnishing copies of its experts' reports provided petitioner "will pay an appropriate portion of the cost of obtaining such reports as Security Industries, Inc. suggests it is willing to do in its memorandum." Respondent Utah Hydro further suggested that in "fairness" all parties should be

the text of the superior court's order, it appears that the denial was based upon the court's belief that petitioner's showing of "good cause" was insufficient and upon the additional ground that the reports were beyond the reach of discovery procedures because they were the work products of the attorneys involved.[4]

Before discussing in detail the issues which appertain to the discoverability of reports of expert witnesses, we believe reference to two decisions of this court concerning our rules of discovery is necessary. In our view the discovery philosophy and principles we espoused in Miller v. Harpster[5] and Mathis v. Hilderbrand[6] control resolution of the questions raised in this review proceeding.

In Miller v. Harpster[7] we granted review of a Civil Rule 34 order which required a party and his attorney to produce for inspection all written statements of witnesses to the automobile collision there in question. At the superior court level, the motion to produce was opposed on the grounds that production of the written statements would violate the attorney work-product rule of Hickman v. Taylor;[8] would unfairly give opposing counsel the benefit of defense counsel's preparation; and was unwarranted since there was a lack of com-

pliance by movant with Civil Rule 34's requirement of a showing of good cause.

In rejecting the unfairness contention which was advanced in the Miller case, we said in part that:

The question should not be decided on the basis of what is fair or unfair to petitioner's counsel, but rather on the basis of what is most likely to attain the objectives of the rule.

The broad policy of all of our rules permitting discovery is to eliminate surprise at the trial and to make it convenient for the parties to find and preserve all available evidence concerning the facts in issue, thereby encouraging the settlement or expeditious trial of litigation.

\* \* \* \* \* \*

Counsel have been retained by their clients to bring about an early favorable end to the litigation. They do not acquire property rights in the contents of the written statements they obtain. Experience has proved that the ends of justice are more likely to be served by liberal rules of discovery requiring full disclosure of all unprivileged relevant matter. No purpose of the rule is to reward diligent counsel in a manner that could result in the suppression of knowledge of relevant facts.[9]

required to exchange such reports. Plaintiffs below objected to the production of such reports on the basis of the superior court's decision in the *Hernandez* case.

4. The superior court's order, where germane, reads:
   Upon a proper showing of good cause this motion might be well taken. As it appears to this Court at this time, the camper unit was and is made available to all parties after action was commenced to make any and all tests desired, in contention of claim or defense. In the development and preparation of a claim or a defense, matters or theories occurring as a product of a given party's resource, and not including factual matters unavailable to other parties usually are within the protection of attorney work product. And, in the absence of a sufficient showing to

the contrary this Court must resolve such question against the movant.
   Following the entry of this order, Security Industries petitioned for rehearing in an attempt to make a proper showing of good cause. The superior court found that "no new matter [was] raised" and by minute order denied the petition for rehearing.

5. 392 P.2d 21 (Alaska 1964).

6. 416 P.2d 8 (Alaska 1966).

7. 392 P.2d 21, 23–24 (Alaska 1964).

8. 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

9. Miller v. Harpster, 392 P.2d 21, 23–24 (Alaska 1964). In that case we also said:
   It is suggested that permitting opposing counsel to claim the benefit of

Concerning the insufficiency of the showing of good cause in *Miller*, we said:

> The formal showing of good cause may have left something to be desired. However, respondent's reasons for desiring to inspect the written statements of all witnesses to the collision, the subject of the suit, are so obvious that no extended showing of relevancy is required.
>
> \*　\*　\*　\*　\*　\*
>
> The requirement of a showing of good cause should not be given a strict or technical interpretation. At least where the request for production pertains only to written statements. \*　\*　\* The sooner both parties are aware of the observations of the witnesses, the sooner the litigation can proceed along the usual lines toward settlement or trial.[10]

Mathis v. Hilderbrand [11] is also of significance to the resolution of the discovery questions raised in the case at bar. There the issue presented for review was whether an attending physician of the plaintiff in a personal injury action could be deposed prior to trial. From an analysis of the historical antecedents of the physician-patient privilege, the precedents, and legal commentary regarding the privilege, it was concluded that the commencement of a personal injury action constituted a waiver of the physician-patient privilege and that it was therefore permissible to take the deposition of plaintiff's attending physician

prior to trial. In reaching this conclusion, we said:

> Courts commonly hold that the plaintiff waives the privilege when he voluntarily testifies concerning the injuries being sued upon. Increasingly it is being held that common sense dictates against enforcing the privilege until it has actually been waived during trial, as it almost invariably must be, and then in fairness being required to grant the defendant's request for a continuance to meet the new matter disclosed.
>
> We are convinced that a rigid enforcement of the privilege under the facts of this case would serve no useful purpose and might result in injustice. We accordingly hold that the plaintiffs in this personal injury action waived the physician-patient privilege by the commencement of the action to the extent that attending physicians may be required to testify on pretrial deposition with respect to the injuries sued upon.[12]

Tested against the criteria and discovery philosophy pronounced in the Mathis v. Hilderbrand and Miller v. Harpster cases, the trial court's denial of petitioner's discovery motion is erroneous.

Courts have developed three separate rationales for precluding discovery of reports of experts or the taking of their depositions prior to trial. We are not persuaded that any of the reasons advanced in the decisions thus far, either in and of

---

the efforts of diligent counsel will discourage trial preparation. We doubt that this will happen because the advantages of the rule as we have construed it will accrue to both parties in one form or another.

10. Id. at 23. The attorney work-product rule of Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), was distinguished in *Miller* on the basis that there

petitioner has not been requested to reduce the oral statements of witnesses to writing. All that has been requested is the production of written statements of witnesses to the collision, including those of the parties.

In the *Miller* case we also approved that portion of the superior court's discovery order which required petitioner to produce defendant's public liability and property damage insurance policy. As to this issue we said in part at page 22:

Definite knowledge as to whether or not there was insurance coverage and if there was the name of the carrier, and the amount would be of assistance to the plaintiff in determining whether to prosecute or settle the action.

11. 416 P.2d 8 (Alaska 1966).

12. Mathis v. Hilderbrand, 416 P.2d 8, 10 (Alaska 1966) (footnote omitted).

themselves, or collectively, warrant holding discovery procedures inapplicable to experts or their reports. Upholding of the lower court's denial of discovery in the case at bar would be tantamount to repudiation of the *Mathis* and *Miller* decisions, and would negate what appears to us to be a logical extension of the rationale of these cases.

Miller v. Harpster [13] anticipated our present rejection of the work-product explanation which has been employed to deny discovery of expert witnesses' reports. In Hickman v. Taylor, [14] the Supreme Court of the United States first enunciated the "work product" doctrine. The rationale for the work-product rule was formulated in the following manner:

> In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. * * * This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways—aptly, though roughly termed by the Circuit Court of Appeals in this case as the 'work product of the lawyer.' Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. *An attorney's thoughts, heretofore inviolate, would not be his own.* * * * *The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.* (Emphasis supplied.)

Several lower federal court decisions have extended the *Hickman* work-product doctrine to bar discovery of the contents of experts' reports which have been furnished to the party or to his attorney.[15] According to one authority, the reasoning underlying these decisions is that:

> At the root of the more protective attitude evinced in this situation has been a long-standing inclination to consider an expert practically an assistant counsel and, therefore, to treat him for purposes of discovery similarly to an attorney.[16]

On the other hand, extension of the work-product doctrine to experts has been criticized by commentators. One writer states:

> Although most of the cases which have considered the application of the work product doctrine to experts have rejected such an extension, it has been applied to preclude discovery in a number of cases. Extension of this doctrine to experts without qualification appears to be unsound. Unlike an attorney's, client's or investigator's recollection of potential witnesses' conversations or even the statements obtained from potential witnesses, expert information in the form of opinions and conclusions and the support therefor constitute evidence.[17]

Typical of the authorities which have rejected any extension of the work-product doctrine to experts' reports is E. I. Du-

13. 392 P.2d 21, 23–24 (Alaska 1964).

14. 329 U.S. 495, 510–511, 67 S.Ct. 385, 393–394, 91 L.Ed. 451, 462 (1947).

15. See Berkley v. Clark Equipment Co., 26 F.R.D. 153 (E.D.N.Y.1960); United States v. Certain Parcels of Land, 25 F.R.D. 192 (N.D.Cal.1959); Walsh v. Reynolds Metals Co., 15 F.R.D. 376 (D. N.J. 1954).

16. Taine, Discovery of Trial Preparations in The Federal Courts, 50 Col.L.Rev. 1026, 1050 (1950). Some courts which have adhered to the assistant counsel the-

ory of the expert have reasoned that the expert's opinion ought to be protected, while the facts upon which they are based should be more freely discoverable. See, e. g., Walsh v. Reynolds Metals Co., 15 F.R.D. 376, 378–379 (D.N.J.1954).

17. J. Long, Discovery and Experts Under The Federal Rules of Civil Procedure, 38 F.R.D. 111, 141–142 (1965) (footnotes omitted). See also the general analysis of the entire problem in J. Friendenthal, Discovery and Use of an Adverse Party's Expert Information, 14 Stan.L.Rev. 455, 485–488 (1962).

Pont De Nemours & Co. v. Phillips Petroleum Co.[18] where the court said:

> In view of what has been said about work product, it seems clear to me that the greater part of the documents asked for by the Rule 34 motions of the parties are not work product, or, in other words, the policy of privacy for a lawyer's trial preparation does not apply to them. * * *
>
> * * * * * *
>
> * * * It did not become professional legal work so that any work product rule can be invoked in respect of it merely because at some point the prospect of litigation arose and the scientific workers were ordered to send their reports to the plaintiff's legal department or trial counsel.[19]

We are in agreement with the authorities which have declined to extend the *Hickman* work-product rule to shelter reports of experts from discovery. In our view, discovery of an expert's report does not violate the lawyer-privacy rationale of the *Hickman*[20] rule. The conclusions and opinions of an expert, unlike those of an attorney, constitute relevant evidence and should be made subject to discovery procedures.

In addition to the work-product doctrine, several decisions have based denial of discovery of the reports of experts upon the theory of the existence of an attorney-client privilege. In Guilford Nat'l Bank v. Southern Ry.[21] the discovery motion was directed at written statements the defendant himself had obtained from several witnesses. In rejecting defendant's attorney-client privilege contentions, the court said:

> It has been repeatedly held that the privilege and immunity asserted by the defendant does not extend to matters obtained by a party himself or his agent.[22]

Professor Friedenthal views the applicability of the attorney-client privilege as covering

> only communications to the attorney; it does not immunize the knowledge of the client and it certainly should not be applied to the knowledge of his agents. Obviously an individual who is aware of material facts cannot, simply by repeating those facts to his attorney, prevent his adversary from questioning him as to those facts either before or at the trial.
>
> * * * * * *
>
> In summary, then, it should be clear that the attorney-client privilege should be applied only to protect communications, not facts. * * * [T]he experts' observations and conclusions themselves, whether or not contained within a report, and even if based to some extent on communications of the client, are facts which, if relevant, constitute evidence.[23]

We hold that the attorney-client privilege is not available to insulate the expert or his reports from discovery.[24] As a matter of policy, the communication of relevant facts by an expert to an attorney should not place such facts beyond the

18. 24 F.R.D. 416, 421–422 (D.Del.1959).

19. See also Sachs v. Aluminum Company of America, 167 F.2d 570 (6th Cir. 1948); Leding v. United States Rubber Co., 23 F.R.D. 220 (D.Mont.1959).

20. 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

21. 24 F.R.D. 493, 499 (M.D.N.C.1960), reversed on other ground, 297 F.2d 921 (4th Cir. 1961).

22. Cited in support of this statement were Royal Exch. Assur. v. McGrath, 13 F.R.D. 150 (S.D.N.Y.1952); Hughes v.

Pennsylvania R.R., 7 F.R.D. 737 (E.D. N.Y.1958); Smith v. Washington Gas Light Co., 7 F.R.D. 735 (D.D.C.1948); Thomas v. Pennsylvania R.R.; 7 F.R.D. 610 (E.D.N.Y.1947); 2 W. Barron & A. Holtzoff, Federal Practice & Procedure § 798, at p. 509 (1950).

23. J. Friedenthal, Discovery and Use of An Adverse Party's Expert Information, 14 Stan.L.Rev. 455, 463, 469 (1962) (footnotes omitted).

24. Compare our disposition of the physician-patient privilege claim in Mathis v. Hilderbrand, 416 P.2d 8 (Alaska 1966).

ambit of discovery procedures. To hold otherwise would be contrary to the objectives of our discovery rules and result in an indefensible extension of the attorney-client privilege.

The third foundation for denial of discovery of experts and of their reports which has been advanced is the "unfairness" argument. The classical formulation of this doctrine is found in Judge Moskowitz's opinion in McCarthy v. Palmer [25] where he wrote:

> While the Rules of Civil Procedure were designed to permit liberal examination and discovery, they were not intended to be made the vehicle through which one litigant could make use of his opponent's preparation of his case. To use them in such a manner would penalize the diligent and place a premium on laziness.

Another facet of the unfairness argument places emphasis upon the financial aspects of the problem in addition to the diligence factor. It is argued that the party has a property interest in the conclusions his expert has prepared for litigation, and that to permit their discovery would amount to the taking of another's property without

compensation. Thus, the court in Lewis v. United Airlines Transport Corp.[26] said:

> To permit a party by deposition to examine an expert of the opposite party before trial, to whom the latter has obligated himself to pay a considerable sum of money, would be equivalent to taking another's property without making any compensation therefor.[27]

We believe Miller v. Harpster [28] to be dispositive of these "unfairness" contentions. *Miller* subordinated any potential element of unfairness to opposing counsel to the paramount criterion of the attainment of the objectives of our discovery rule (i. e., elimination of surprise at trial, location and preservation of evidence, and the encouragement of settlement or expeditious trial of litigation). In *Miller,* we specifically held that counsel did not possess any property rights in reports of non-expert witnesses.[29]

■ In fashioning an order to guard against any element of unfairness, trial judges are vested with sufficient discretion and flexibility to minimize or eliminate the possibility of any unfairness actually occurring.[30] Under our rules of procedure, the

25. 29 F.Supp. 585, 586 (E.D.N.Y.1939), aff'd. 113 F.2d 721 (2d Cir.), cert. denied, 311 U.S. 680, 61 S.Ct. 50, 85 L.Ed. 438 (1940).

26. 32 F.Supp. 21, 23 (W.D.Pa.1940).

27. See also Walsh v. Reynolds Metals Co., 15 F.R.D. 376 (D.N.J.1954); United States v. Certain Parcels of Land, 15 F.R.D. 224 (S.D.Cal.1953); cf., 4 J. Moore, Federal Practice ¶ 35.06, at 1531 (2d ed.1950).

28. 392 P.2d 21 (Alaska 1964).

29. Compare Leding v. United States Rubber Co., 23 F.R.D. 220, 222 (D.Mont. 1959), where it was said in regard to the unfairness argument:
> This situation does not exist in the instant cases because an examination of the file shows that the plaintiffs have likewise expended or obligated them-

selves to expend money for analysis of the boots by other experts and that the result of such analysis has been made available to the defendant. As pointed out in Sachs v. Aluminum Co. of America, supra, 'The primary concern of courts of justice is to elicit truth essential to correct adjudication.' Certainly this end can best be achieved in the instant cases by a full disclosure of all information available to either party.

30. See Henlopen Hotel Corp. v. Aetna Ins. Co., 33 F.R.D. 306, 308 (D.Del. 1963), where the court said that the unfairness-financial burden argument "has no application here for the reason that the moving party has offered to pay a reasonable portion of the fees of the plaintiff's experts."
> Mr. Long makes the following observations regarding the wisdom of denying

trial judge can condition discovery upon payment of the experts' expenses or any reasonable part thereof.[31] The court is also empowered to make discovery of experts or their reports reciprocal by providing for simultaneous exchanges of reports as well as appropriate timing of the taking of depositions. A further possibility is the deferral of any action on discovery motions until all parties to the litigation have disclosed the identity of the experts they intend to call at trial. Imaginative and creative action by the trial judge is called for in administering the discovery ruling we have enunciated in this case.

■ Remaining for discussion is the trial court's apparent ruling that petitioner-movant failed to make a sufficient showing of good cause under Civil Rule 34. On the circumstances of this record, we hold that the trial court erred in refusing discovery on the grounds of any purported defect in petitioner's showing of good cause. In Miller v. Harpster [32] we said that Civil Rule 34's requirement of good cause "should not be given a strict or technical interpretation. At least where the request for production pertains only to written statements."[33] Paralleling the basis of our decision in *Miller* is that of the court in Henlopen Hotel Corp. v. Aetna Ins. Co.[34] where it was said:

> Even assuming that some showing of good cause had to be made, the views of Chief Judge Wright in United support the conclusion that even a minimal showing should be sufficient unless persuasive reasons exist to the contrary. In my view, a minimal showing lies in the need to know and understand not only the facts, but also the theories and the method

discovery of expert reports based on the property right concept:
> Denying discovery for reasons proceeding from the expense of experts places undue emphasis upon the expert's expense rather than the justice, speed and expense of the entire litigation. It makes an unwarranted discrimination in favor of experts as opposed to other witnesses, who may suffer greater loss because of the time spent in having a deposition taken. * * * The expense to a party is minimal if a court requires that a copy of an expert's report be furnished. Even where only one side has experts retained, no unfairness based on expense would exist to permit a deposition upon payment to the party of the expense he might incur to the expert at the expert's usual per diem rate. Where all parties have experts or where discovery is postponed until all experts have completed their studies, the costs of taking depositions are substantially offset, and if discovery is limited to exchanging reports, the expense is insignificant. Considerations proceeding from the expense of experts, therefore, have no general validity in supporting a rule denying discovery of experts, for the court has adequate power to protect the pocketbooks of the parties and experts.
> 38 F.R.D. 111, 133–134 (1966) (footnotes omitted).

31. Civ.R. 34 also provides in part that the order requiring production "shall specify the time, place, and manner of making the inspection and taking the copies and photographs and may prescribe such terms and conditions as are just."
In the case at bar, petitioner offered to bear a reasonable portion of the expenses involved in production of the reports of its opponent's expert witnesses.
See also Civ.R. 30(b) which reads in part "the court may make any other order which justice requires to protect the party or witness from annoyance, undue expense, embarrassment, or oppression."

32. 392 P.2d 21, 23 (Alaska 1964).

33. See United Air Lines Inc. v. United States, 26 F.R.D. 213, 217 (D.Del.1960), where the court said in regard to good cause:
[F]or although the rules establish it as a standard, it has no frame of reference. The Court's decision, therefore, ultimately is no more than a comparative evaluation of competing claims of need and prejudice.

34. 33 F.R.D. 306, 308 (D.Del.1963) (footnote omitted).

of approach upon which the adversary's experts rely.[35]

In light of the above authorities and under the circumstances of this case where expert testimony will be required to establish the liability issues, we are of the opinion that a sufficient showing of good cause was made below. Good cause has .been demonstrated in the need to eliminate surprise at trial, and the related need for full and effective cross-examination of opponents' expert witnesses.

We, therefore, conclude that reports of experts and experts themselves are within the ambit of our discovery rules. Adhering to the discovery principles which were articulated in *Miller* [36] and *Mathis,*[37] we believe that the ends of justice and the attainment of the objectives of our rules of discovery will be furthered by permitting the discovery of reports of experts as well as the taking of their pretrial depositions.

The superior court's order denying petitioner's Civil Rule 34 motion is reversed and the case remanded for further proceedings not inconsistent with the foregoing.

35. Professor Friedenthal writes:
If availability of other experts were the sole criterion for prohibiting disclosure the need for expert testimony might often result in a race between litigants to employ the most prominent expert whose opinions obviously would carry much weight with a local jury. If the expert was favorable, so much the better; if not, he would be unavailable to the other side. * * *

The situation is quite different when one party seeks the expert information solely to establish a foundation for cross-examination in the event the expert is called by his employer during trial. It is fundamental that opportunity be had for full cross-examination, and this cannot be done properly in many cases without resort to pretrial discovery, particularly when expert witnesses are involved. Unlike two eye-witnesses who disagree, two experts who disagree are not necessarily basing their testimony on their views of the same objective features. Instead they may rely on entirely separate data, since the theoretical bases underlying their respective approaches may differ radically. Before an attorney can even hope to deal on cross-examination with an unfavorable expert opinion he must have some idea of the bases of that opinion and the data relied upon. * * * He may need advice of his own experts to do so and indeed, in certain cases, his experts might require time to make further inspections and analyses of their own.

14 Stan.L.Rev. 455, 484–485 (1962) (footnotes omitted).

36. Miller v. Harpster, 392 P.2d 21 (Alaska 1964).

37. Mathis v. Hilderbrand, 416 P.2d 8, 10 (Alaska 1966).