Francis J. BEAUMASTER, Opal L. Beaumaster and Mark Beaumaster, Appellants,

v.

Fay CRANDALL and Central Alaska Missions, Inc., Appellees.

No. 2845.

Supreme Court of Alaska.

March 31, 1978.

L. Ames Luce, Kelly & Luce, Anchorage, for appellants.

Marcus R. Clapp, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for appellees.

Before BOOCHEVER, Chief Justice, and RABINOWITZ and CONNOR, Justices.

## OPINION

CONNOR, Justice.

This is an appeal from a judgment in favor of the defendants in a personal injury action arising out of an automobile collision. Trial was by jury.

The accident occurred at approximately Mile 112 on the Glenn Highway on January 21, 1973, in the early afternoon. Plaintiffs-appellants Francis, Opal and Mark Beaumaster are the father, mother and brother, respectively, of Michael Beaumaster. Francis and Mark Beaumaster were passengers, along with Michael's wife, in Michael's automobile. Opal Beaumaster was not at the accident scene. Her claim is for the loss of consortium of her husband, Francis.

On the day in question, the Beaumaster automobile was proceeding southward on the Glenn Highway, when Michael noticed an overturned automobile off the roadway. He stopped his car approximately 670 feet south of the crest of a hill, turned on his hazard lights, and went to see if he could render assistance. The exact location of the parked Beaumaster vehicle was greatly disputed, but viewing the evidence in the light most favorable to defendants-appellees, the automobile was partially or totally obstructing the southbound lane.[1]

The day was cold, so Michael's passengers remained in the parked vehicle while he went to the disabled vehicle. A witness testified that the driving conditions were typical for winter, with patches of ice and packed snow on the road. Visibility was clear.

At this point, a northbound automobile stopped approximately 900 feet south of the Beaumaster car and pulled slightly over to the east side of the road. The driver, Mr. Majerle, testified that the Beaumaster vehicle was parked "on the backside of a blind hill" and it appeared too dangerous to pass.

Appellee Crandall approached this scene from the north, the same direction in which the Beaumaster vehicle had been traveling. Crandall testified that she frequently drove this highway, and was very familiar with it. She described the events leading up to her collision with the Beaumaster vehicle as follows:

"As I crested the hill that early afternoon, I saw immediately in front of me a car parked in my lane on the highway and I immediately shifted from drive into second to begin the slow down so that I could pass him. And in the next brief seconds, I can't give the exact order of what happened. I can only tell you what happened without necessarily the correct sequence, but there was a car coming up the left-hand [northbound] lane, that I thought was moving toward me, and I realized that that car in the left-hand lane was also parked, and that the roadway in front of me was completely blocked. At the same time I—thought that I—knew that there was a car over the side on the right-hand [southbound] side and I knew that I would have to stop. I was not sure that I could, but it was the alternative of two that I had and I tried to brake. And as soon as I braked, I went into a skid. I tried to bring the rear of my stationwagon around and I could not do it and I lost control of the car."

Appellants do not dispute this account of the accident, but allege that Crandall was negligent in operating her vehicle as she crested the hill, and that her erroneous perception of the Majerle automobile as blocking her clearance is not a defense.

Where necessary, we will develop the facts more fully as they relate to the particular issues on appeal.

The issues presented on appeal are:

1. Did the trial court err in instructing the jury on the sudden emergency doctrine?

2. Was it an abuse of discretion, invading the province of the jury, for the

1. Other testimony placed the car as far to the west as possible, almost to the ditch, and main- ly on the shoulder, with a foot to a foot and a half on the road.

trial court to refuse to instruct the jury on the basic speed law (13 AAC 02.275) and to find that, as a matter of law, the Beaumaster vehicle was illegally parked?

3. Did the trial court err in not directing a verdict on the question of defendant Crandall's negligence?

4. Did the defendants make a "golden rule" argument to the jury, and if so, was it prejudicial error for the court to have failed to sustain an objection to that argument?

5. Did the court err in ordering plaintiffs to produce a motion picture for defendants' use, and in permitting the introduction of the film into evidence?

I

The first issue on appeal concerns the trial court's instruction on the sudden emergency doctrine. The court instructed the jury as follows:

"A person who, without negligence on his part, is suddenly and unexpectedly confronted with peril arising from either the actual presence of, or the appearance of, imminent danger to himself or to others, is not expected nor required to use the same judgment and prudence that is required of him in the exercise of ordinary care in calmer and more deliberate moments. His duty is to exercise only the care that an ordinarily prudent person would exercise in the same situation. If at that moment he does what appears to him to be the best thing to do, and if his choice and manner of action are the same as might have been followed by any ordinarily prudent person under the same conditions, he does all the law requires of him, although in the light of after-events, it should appear that a different course would have been better and safer." [2]

■ The propriety of the sudden emergency instruction in certain negligence cases was recognized in *Wilson v. Sibert*, 535 P.2d 1034, 1037 (Alaska 1975).[3] *See also Snipes v. March*, 378 P.2d 827 (Alaska 1963). The decision whether to give a sudden emergency instruction is ordinarily "committed to the trial court's discretion, and one which we will not disturb in the absence of a showing of an abuse of discretion." *Wilson, supra*, at 1039. However, emergency instructions will be struck down "where there is insufficient evidence to support an inference of an emergency situation . . . ." *Wilson, supra*, at 1040.[4]

In *Wilson*, the defendant was stopped in his automobile in line at a drive-in window of a bank. The car in front of him suddenly started to back up. Without waiting to see if, in fact, the car would back up far enough to strike his automobile, the defendant "immediately shifted his car into reverse and backed up, colliding with the front of [the plaintiff's] car . . . ." *Wilson, supra*, at 1035. Although the plaintiff protested that the defendant should have at least glanced behind him or honked his horn before backing up, the emergency instruction was upheld.

■ Appellants first contend that there was no emergency because the Majerle vehicle was not in fact blocking the northbound lane as Crandall perceived it. The evidentiary predicate for the giving of a sudden emergency instruction, as set forth in *Wilson*, requires three elements. First, one sees something. Second, one interprets what one sees as requiring immediate action in order to avoid or reduce injury. Third, one reacts.

In the case at bar, appellee Crandall first saw the Beaumaster automobile from 600 feet away. The Majerle vehicle was approximately 900 feet beyond that. There is no question that Crandall misperceived the situation. However, she believed there was imminent peril when she decided to apply

**2.** *See* W. Prosser, *Law of Torts*, pp. 167–70, § 33 (4th ed. 1971); 2 Harper & James, *The Law of Torts*, pp. 938–40, § 16.11 (1956 ed.); *Wagner v. International RR.*, 232 N.Y. 176, 177, 133 N.E. 437, 438 (1921) (opinion by Cardozo, J.); and Annot., 80 A.L.R.2d 5 (1961).

**3.** *See* Restatement (Second) of Torts (1965), § 296.

**4.** *See, e. g., Squires v. McLaughlin*, 44 Wash.2d 43, 265 P.2d 265 (1953).

her brakes. This differs from the situation presented in *Wilson*. In *Wilson* the driver saw what was there—the car in front of his did begin to back up. In the instant case, Crandall saw what was *not* there—there was not in fact a blockade. While some courts have upheld a sudden emergency instruction where there is apparent, rather than real peril,[5] such an instruction was improper here because, as a matter of law, appellee's misperception was unreasonable.

The issue for the court in evaluating the propriety of the sudden emergency instruction in *Wilson* was whether the trier of fact could properly conclude that the situation actually occurring constituted "an inference of an emergency situation." *Wilson, supra*, at 1040. "Inference" does not refer to the defendant driver's capacity to view what was there, but rather to the possibility that the actual situation indeed constituted an emergency. Only once it is determined that the jury could conclude that an emergency existed, can the sudden emergency instruction be proper. The jury would then use

that instruction in determining whether the defendant's reaction was reasonable.

■ Appellee Crandall, on a clear day, saw as equally distant from her, one vehicle which was in fact five football fields away from her, and one vehicle which was in fact, only two football fields distant. Given the extent of appellee's misperception, we have concluded that the facts disclose no emergency as a matter of law. The trial court abused its discretion in giving the sudden emergency instruction.[6] We must reverse the judgment.

## II

Appellants' next two contentions may be treated together. Appellants claim that the court committed prejudicial error in refusing their proposed instruction on 13 AAC 02.275, which is known as the basic speed law.[7] Appellants further claim that the judge invaded the province of the jury by deciding that the Beaumaster vehicle was illegally parked as a matter of law, and in not submitting the question of defendant's

5. See *Heerman v. Burke*, 266 F.2d 935 (8th Cir. 1959); *Vanderkaar v. Bergsma*, 43 Wis.2d 556, 168 N.W.2d 880 (1969); *Barry v. Arrow Transportation Co.*, 83 Idaho 41, 358 P.2d 1041 (1960); *Leek v. Dillard*, 304 S.W.2d 60 (Mo. App.1957).

6. Appellants also contend that Crandall was not entitled to the sudden emergency instruction because even if there were an emergency, it was caused by Crandall's own negligence. Appellants are correct in stating that one is not entitled to a sudden emergency instruction if the emergency is caused by one's own negligence. See Restatement (Second) of Torts, § 296; Prosser, *Law of Torts*, § 33, p. 170 (4th ed. 1971). However, in light of our holding above, it is unnecessary to reach this issue.

7. 13 AAC 02.275 reads as follows:
    "BASIC RULES AND MAXIMUM LIMIT.
    (a) A person may not drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards existing at the time. Speed shall be controlled so as to avoid colliding with a person, vehicle or other conveyance operated in compliance with a legal requirement.
    (b) Except when a special hazard exists that requires lower speed for compliance with (a) of this section, the limits specified in this section or established as authorized by

this chapter or other law are the maximum lawful speeds, and a person may not drive a vehicle at a speed in excess of the maximum limit except as provided in this chapter
    (1) 30 miles per hour on a city street;
    (2) 50 miles per hour on an unpaved state highway, other than a city street;
    (3) 55 miles per hour on a paved state highway, other than a city street;
    (4) 55 miles per hour on divided four-lane limited or controlled access state highway;
    (5) 40 miles per hour on a paved highway within a suburban district;
    (6) 30 miles per hour on an unpaved highway within a suburban district.
    (c) A driver of a vehicle shall, consistent with (a) of this section, drive at an appropriate reduced speed when approaching and crossing an intersection or railroad crossing, when approaching and going around a curve, when approaching a hillcrest, when traveling upon a narrow or winding roadway, or when a special hazard exists with respect to a pedestrian or other traffic, or by reason of weather or roadway condition.
    (d) A person following a vehicle driving at less than the legal maximum speed and desiring to pass that vehicle may exceed the speed limit at only a speed and for only a distance necessary to complete the pass with a reasonable margin of safety."

negligence in cresting the hill at an excessive speed to the jury.

The trial court found that the Beaumaster car, which had been stopped either partially or totally on the highway lane, was parked illegally in violation of 13 AAC 02.-340 [8] and AS 28.35.140.[9] 13 AAC 02.275(a) cautions prudence in controlling speed "so as to avoid colliding with a . . . vehicle . . . operated in compliance with *a legal requirement*" (emphasis added). Since the Beaumaster vehicle was not in compliance with a legal requirement, the trial judge held 13 AAC 02.275(a) to be inapplicable to this situation.

■■■ While the exact location of the Beaumaster car was greatly disputed, by every account of the witnesses at trial, the car was not entirely clear of the lane of traffic. The most favorable evidence for the appellants concerning the location of their car was that given by Francis Beaumaster:

"[i]t was parked on the side of the road on the right-hand side, right even with the car that was tipped over, and it was about a foot, a foot and a half on the road, the rest was on the shoulder."

On a two lane highway, even this one foot obstruction could easily cause a following car to swerve into the opposite lane to clear a parked vehicle. This would interfere "with the normal flow of traffic" and amount to a violation under 13 AAC 02.340 and AS 28.35.140. However, Beaumaster pulled over to the side of the road in an emergency situation in order to aid the occupants of an overturned car. He apparently parked as far over on the right as he could given the snow conditions and the

presence of a ditch on the side of the road. His emergency flasher lights were one. While 13 AAC 02.340(a) prohibits stopping, standing or parking on the highway, subsection (b) exempts service vehicles as defined in AS 28.35.140. AS 28.35.140 describes service vehicles as buses, garbage trucks, tow trucks or ambulances, but a reasonable construction of the statute would hold that Beaumaster was acting in a service capacity. AS 28.35.140 is not an exclusive list of service vehicles, and Beaumaster, while not operating a professional service vehicle, was engaged in the same activity as a service vehicle would have been. Therefore, Beaumaster was entitled to make a brief stop on the roadway as necessary in the performance of samaritan efforts. The trial judge erred in finding that the Beaumaster vehicle was illegally parked and that the speed statute, 13 AAC 02.275(a), was inapplicable.

Furthermore, appellants contend that in not giving their proposed instruction on the basic speed statute, the trial court removed from the jury one of the theories of appellants' case. 13 AAC 02.275(c) requires that drivers should reduce speed as appropriate when approaching a hillcrest. Michael Beaumaster testified at trial that he believed Crandall's car was traveling at a speed of 50 to 60 miles per hour when he first saw it. This testimony placed at issue Crandall's compliance with 13 AAC 02.-275(c).

■■■ Issues of material fact regarding the defendant's alleged negligence are questions for the trier of fact.

". . . a jury question, or question of fact exists whenever it can be said that from the evidence and all reasonable inferences to be drawn therefrom, fair

---

**8.** 13 AAC 02.340 provides in part:
"*13 AAC 02.340. STOPPING, STANDING OR PARKING ON HIGHWAY.* (a) A person may not stop, park or leave standing a vehicle, whether attended or unattended, upon a highway, except where the highway is of sufficient width to allow parking without interfering with the normal flow of traffic and where the parking, stopping or standing does not interfere with the normal flow of traffic and is not prohibited by local or state authority.

(b) This section does not apply to the driver of a service vehicle as provided by AS 28.35.140. . . ."

**9.** AS 28.35.140 provides:
"*Sec. 28.35.140. Unlawful obstruction or blocking of traffic.* No person may purposely obstruct or block traffic on any roadway by any means. However, a service vehicle such as a bus, garbage truck, tow truck or ambulance may make brief stops on a roadway, which stops on the roadway are necessary in the performance of its services."

minded people in the exercise of reasonable judgment could reach differing conclusions on the issue in controversy." *Teller v. Anchorage Asphalt Paving Co., Inc.*, 545 P.2d 177, 180 (Alaska 1976). We believe that appellants were entitled to an instruction on the requirements of 13 AAC 02.275(c) pertaining to driving at an appropriate reduced speed when approaching a hillcrest. It was error for the trial court to refuse appellants' proposed instruction on 13 AAC 02.275.

### III

Since our disposition of the above issues required reversal, we will address appellants' remaining claims of error only to the extent necessary to guide the proceedings upon remand.

Appellants contend that Crandall's own testimony established that she failed to exercise due care and, therefore, the trial court erred in denying appellants' motion for a directed verdict. When ruling on a motion for a directed verdict under Civil Rule 50(a), the judge must view the evidence in the light most favorable to the nonmoving party (appellees here) and may grant such a motion "only if it can be said that fair-minded jurors in the exercise of reasonable judgment could reach but one conclusion on the issue in controversy." *Bachner v. Rich*, 554 P.2d 430, 436 (Alaska 1976); *Teller v. Anchorage Asphalt Paving Co., Inc.*, 545 P.2d 177 (Alaska 1976); *Holiday Inns of America, Inc. v. Peck*, 520 P.2d 87 (Alaska 1974); *Mertz v. J. M. Covington Corp.*, 470 P.2d 532 (Alaska 1970); *Otis Elevator Co. v. McLaney*, 406 P.2d 7 (Alaska 1965). Applying this standard, there is sufficient evidence in the record to support the trial judge's conclusion that there was conflicting evidence over which fair-minded jurors could reach differing conclusions. Certainly more than a modicum of doubt

exists over the issue of defendant Crandall's alleged negligence.

A directed verdict was properly denied and the issue of negligence correctly went to the jury.

### IV

Appellants next maintain that certain remarks of defense counsel during closing argument were improper. Defense counsel spoke to the jury as follows:

"If at that moment he does what appears to him to be the best thing to do and if his choice and manner of action are the same as might have been followed by any ordinarily prudent person under the same conditions, he does all the law requires of him, although in the light of after events it should appear that a different course would have been better for safety. That's not ordinary negligence, and that is Fay Crandall's story to you in a nutshell. We cannot argue some of the factual evidence that has come into this case on distance, those things are arguable to the point of putting you in that position. *You say, 'I'm the driver of that car, I'm out for a leisurely drive with a friend of mine to Anchorage.'* " (Emphasis added)

We have explicitly held that this type of argument, known as a "golden rule" argument, is improper.[10] *Mallonee v. Finch*, 413 P.2d 159, 164 (Alaska 1966). Since the argument implores the jurors to put themselves in the position of the defendants, and then to ask themselves what kind of outcome they would wish under the circumstances, most courts will reverse a judgment where there has been an objection and no attempt to correct the impression created by such an argument or where such an argument has been otherwise potentially harmful.[11]

---

10. This is a reference to the Biblical command: "Do unto others as you would have them do unto you." Matthew 7:12, Luke 6:31.

11. *See, e. g, Klotz v. Sears, Roebuck & Co.*, 267 F.2d 53, 55 (7th Cir. 1959); *F. W. Woolworth Co. v. Wilson*, 74 F.2d 439, 442–43 (5th Cir. 1934); *Danner v. Mid-State Paving Co.*, 252

Miss. 776, 173 So.2d 608, 614 (1965); *Fisher v. Williams*, 327 S.W.2d 256, 264 (Mo.1959); *Leach v. Metzger*, 241 Md. 533, 217 A.2d 302, 304 (1966); *Millen v. Miller*, 224 Pa.Super. 569, 308 A.2d 115, 117 (1973); Annot., 70 A.L.R.2d 935 (1960).

Counsel's statement was an improper "golden rule" argument. The trial judge erred in not sustaining appellants' objection. However, were we not reversing for other reasons, we would not have found this to be reversible error.

"The mere mention of putting themselves in defendant's place does not constitute reversible error, without a studied purpose to prejudice the jury." *Brummitt v. Chaney*, 18 Mich.App. 59, 170 N.W.2d 481, 485 (1969).

*See also Mallonee v. Finch, supra,* at 164.

Defense counsel did not intend to improperly urge the jury to put itself in the place of the litigant and ignore its sworn duty to be impartial, as most improper golden rule arguments do. Rather, he was misstating the reasonable person standard to be applied in this case.[12] He also did not urge the jury to disregard the evidence, an important factor in *Mallonee* for not finding prejudice. He had no studied intent to prejudice the jury. He did not continue with this line of argument after the objection was made. Nor was the argument incorporated into any of the instructions. The record reflects, furthermore, that the trial judge gave complete and careful instructions on ordinary care and the measurement of conduct by the standard of the reasonable and prudent person. Under these circumstances, we would have held that the trial court's ruling did not constitute reversible error.

## V

▇ Appellants' last contention is that the trial court erred in ordering them to produce, for defendants' use, a motion picture which had been prepared in connection with the accident by one of plaintiffs' investigators. The film, apparently shot through the window of a moving vehicle five or six weeks after the accident, depicted the hill where the accident had occurred. The plaintiffs had decided not to make use of the film at the trial.

Prior to the trial, defendants had submitted to plaintiffs a request for production of documents, pursuant to Rule 34 of the Alaska Rules of Civil Procedure. Plaintiffs produced several documents, including photographs of the accident scene and the damaged vehicles. Defense counsel did not learn of the existence of the motion picture until the first day of trial.[13] Counsel thereupon moved the court to order plaintiffs to produce the motion picture. The court ordered the motion picture produced, over objection, and permitted defendants' use of it at trial.

The court allowed the exhibition of the film at trial because it was the only pictorial evidence illustrating the incline of the hill in question. All other photographs and slides gave the appearance of a flat road. In so ruling, the judge also denied defendants' request for a jury viewing of the scene of the accident, finding that the film adequately displayed the steepness of the incline.

Appellants argue that defendants did not comply with the technical requirements of Rule 26(b)(3) of the Alaska Rules of Civil Procedure, and therefore, that the film was erroneously admitted.[14] They argue, that

---

12. The reasonable man is not the subjective judgment of any individual, but a personification of a community ideal of reasonable behavior. *Vaughan v. Menlove*, 1738, 3 Bing.N.C. 486, 132 Eng.Rep. 490; Prosser, *Law of Torts*, § 32, pp. 150–51 (4th ed. 1971); Restatement (Second) of Torts (1965), § 283, comment c.

13. In examining his first witness, an accident investigator, plaintiffs' counsel alluded to the existence of the film. This was the first indication to defense counsel that there was such a film. Plaintiffs' counsel apparently had the film in his possession for over two years. However, when questioned by the judge, counsel stated that his secretary had found the film in the basement of their office sometime within a month of the trial and its existence had only been brought to his attention at that time.

14. Rule 26(b)(3) provides in pertinent part:

"(3) *Trial Preparation: Materials.* Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor,

"there was absolutely nothing to prevent the defendants, in properly preparing for trial, from having motion pictures taken of the roadway in question."

We have often said that the rules of discovery are to be liberally construed. *Van Alen v. Anchorage Ski Club, Inc.,* 536 P.2d 784, 787 (Alaska 1975), and cases cited therein. The objective of our discovery rules was clearly enunciated in *Miller v. Harpster,* 392 P.2d 21 (Alaska 1964), where a similar work-product claim was raised.

> "The question should not be decided on the basis of what is fair or unfair to petitioner's counsel, but rather on the basis of what is most likely to attain the objectives of the rule.
>
> The broad policy of all of our rules permitting discovery is to eliminate surprise at the trial and to make it convenient for the parties to find and preserve all available evidence concerning the facts in issue, thereby encouraging the settlement or expeditious trial of litigation. . . . Counsel have been retained by their clients to bring about an early favorable end to the litigation. They do not acquire property rights in the contents of the written statements they obtain. Experience has proved that the ends of justice are more likely to be served by liberal rules of discovery requiring full disclosure of all unprivileged relevant matter. No purpose of the rule is to reward diligent counsel in a manner that could result in the suppression of knowledge of relevant facts." *Id.* at 23–24.

In *Miller,* we held that a showing of good cause under Rule 34 "should not be given a strict or technical interpretation." *Id.* at 23. The same policy may equally apply to the requirements set out in Rule 26(b)(3).

The trial court was well within its discretion in holding that the requirements of Rule 26(b)(3) had been substantially met.

Certainly the discovery of the film by defendants after the trial was already in progress made the matter of its duplication much more problematic in terms of expense and delay. Also, it is not enough to argue that the defendants could have made a similar film, when, without the film, a substantial distortion of the facts of the case would result. *See Security Industries, Inc. v. Fickus,* 439 P.2d 172, 174 (Alaska 1968); *Mathis v. Hilderbrand,* 416 P.2d 8, 10 (Alaska 1966); *Miller v. Harpster,* 392 P.2d 21, 23–24 (Alaska 1964). The trial court's decision not only expedited the trial proceedings, but was also a fair resolution consonant with discovery objectives.[15]

■ Appellants also contend that a proper foundation was not laid for the admission of the film. With respect to authenticating such evidence, Professor McCormick has written:

> ". . . [I]t appears to have become generally recognized that, as with the still photograph, the reliability and accuracy of the motion picture need not necessarily rest upon the validity of the process used in its creation, but rather may be established by testimony that the motion picture accurately reproduces phenomena actually perceived by the witness. Under this theory, though the requisite foundation may, and usually will, be laid by the photographer, it may also be provided by any witness who perceived the events filmed." (footnotes omitted) McCormick, *Handbook of the Law of Evidence,* § 214, p. 533, (2d ed. 1972).

Before the film was shown in court, defendant Crandall testified as to the authenticity of the film, stating that it did fairly represent the scene of the accident, with some qualifications regarding snow and weather conditions. The court then admonished the jury to consider the film *only* for the purpose of illustrating the incline of the hill,

---

insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. . . ."

**15.** Plaintiffs may well have been entitled to an award of the costs involved in preparation of the film, but that issue has not been presented to us.

but to disregard all other inferences such as the speed of the vehicle, distance and visibility conditions.

In light of defendant Crandall's testimony under direct and cross-examination with respect to the film, and the limited purpose for which it was admitted, we see no prejudice which could possibly result from the admission of the film into evidence.

REVERSED and REMANDED.